# THE PEOPLE *ex rel.* E. Follett Bull

*v.*

# THE BOARD OF SUPERVISORS OF LA SALLE COUNTY.

1. MANDAMUS—*to compel county board to build jail.* If a county board should fail and refuse to provide any kind of a jail in which to confine prisoners, and it is made clearly to appear that the finances of the county are such as to justify the construction of one, the duty enjoined on the board by statute may be enforced by *mandamus*, but the court can not interfere with the discretion vested in the board as to the kind of a jail to be provided.

2. COUNTY BOARD—*discretionary power in respect to jails.* The county boards, under the statute, have the sole power to determine the size, cost, and quality of the materials of which county jails shall be constructed. In this, and various other respects, they are invested with a discretion, as to which the courts have no power to interfere.

3. JAILS—*county board is made judge of the suitableness and quality.* Where a board of supervisors have provided a county jail, the court, on an application for a *mandamus*, can not inquire into the fact whether it is suitable or in suitable repair, but this is a question for the board to decide.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. B. F. LINCOLN, and Mr. H. T. GILBERT, for the plaintiff in error.

Mr. G. S. ELDRIDGE, and Mr. HENRY MAYO, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a petition, in the name of the People, on the relation of E. Follett Bull, for a *mandamus* to compel the board of supervisors of La Salle county to erect or provide a suitable jail for the county.

The petitioner, after averring that he is a citizen, legal voter, property holder and tax-payer in the county, alleges:

" That the place now used, and which, since about the year A. D. 1843, has continually been used as the county jail of

La Salle county, is situated in the south part of the basement of the county court house in Ottawa, in said county, and consists of a hall about forty-five feet long, nine feet wide and nine feet high. The only means of admitting light and air into said hall are two small windows about three feet wide and four feet high—one at each end of said hall—about two feet of the top of said windows being above the surface of the ground. On the north side, and opening into said hall, are six small cells, about five feet long and four feet wide, used for the confinement of prisoners, and also as their sleeping apartments, and to which sunlight and fresh air can not penetrate. The air of the jail is, at times, so foul as to almost stifle the breath of a person just entering it from the fresh air outside, and in rainy weather the water from the outside soaks through the walls of the jail and keeps the floor constantly damp, and by reason thereof the atmosphere of the jail is foul, damp and poisonous, and injurious to the health of persons confined therein, and, although every possible effort is made, by persons having charge of the jail, to keep the same in a clean and healthy condition, yet persons confined therein have been injured in their health by reason of the unhealthfulness thereof; that, situated as it now is, this jail can not be so kept but that persons confined therein will be seriously impaired in their health by reason of the unhealthfulness of the jail; that there is no county jail in said county other than this."

It also appears from the petition, that the grand juries of the county, for more than ten years past, in their reports on the condition of the jail, condemned it; that the county board has long known of the unhealthy condition of the jail, and the action of the grand juries in regard thereto; that minors, persons charged with misdemeanors, persons charged with and convicted of felonies, insane persons, and all classes of persons, except females, are confined in this room or hall together, in violation of section 11, chapter 75, Rev. Stat. 1874; that this law is constantly violated by the board and keeper of the jail; that by the use of the hall as a jail the administration of the criminal law is seriously hindered in the county.

It further appears, that La Salle county is large and wealthy, with a population of about seventy thousand inhabitants, with an assessed valuation of taxable property, for the year 1875, of over $34,000,000; that the county is out of debt and engaged in the construction of no public works; that $60,000 will pay the annual expenses, and that $40,000 will build a suitable jail; that the finances of the county have been for five years, and still are, in a condition to justify the erection of a suitable jail.

To the petition a general demurrer was filed, which the court sustained; the petition was dismissed, and judgment rendered against the petitioner for costs, to reverse which this writ of error has been prosecuted.

It is obvious, from the allegations of the relator's petition, which are admitted, by the demurrer, to be true, that the jail provided by the board of supervisors of La Salle county is far inferior to the wants and public necessities of the people of the county, and we are compelled to express our astonishment, when the wealth and resources of the county are considered, that the board should persist in requiring the officers of the county to confine those who are so unfortunate as to be charged or convicted of crime, in a prison which is dangerous to the life and health of the prisoners.

In a report, made by the grand jury to the court, in regard to the jail, which is made a part of relator's petition, we find the following:

" The air in the jail is so bad as to almost stifle the breath of a person just entering it from the fresh outside air; that the jail is so unhealthy that, not unfrequently, robust, healthy persons, after a short confinement in this jail, have to be removed on account of sickness contracted therein. We have tried to give a description of the jail as it appears to us, but really it baffles description, and we unhesitatingly say that the jail is wholly unfit to confine a human being in for one night, and that it is absolutely inhuman to confine any person in this jail for any length of time."

Many reports, of a similar character, have been made by

different grand juries, and if they be true, the jail can not be regarded otherwise than as a stigma upon the reputation of one among the largest and most wealthy counties in the State.

But, while we are free to concede that the necessities of the county and the demands of the public would seem to require the erection of a better jail in La Salle county, yet the question presented by this record is not what the court might conceive the board of supervisors ought to do, but the real point is, whether the circuit court can legally require the performance of an act, by *mandamus*, the exercise of which has been intrusted by the legislature to the board of supervisors.

Section 26, chapter 34, Rev. Stat. of 1874, p. 307, declares, " It shall be the duty of the county board of each county to erect or otherwise provide, when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county board, county clerk, county treasurer, recorder, sheriff, and the clerks of said courts, and to provide suitable furniture therefor. But in counties not under township organization, no appropriation shall be made for the erection of public buildings, without first submitting the proposition to a vote of the people of the county."

Had the county board failed and refused to provide any kind of a jail in which to confine prisoners, and it clearly appeared that the finances of the county were such as to justify the construction of a jail, we are inclined to the opinion that the duty enjoined by the statute might be enforced by *mandamus;* but such is not this case.

While the provision of the statute requiring the county board to furnish a jail may be regarded as mandatory, which, under proper circumstances, the board may be compelled to observe, yet, the kind of a jail to be provided must necessarily be left to the discretion of the board. They have the sole power to determine the size, cost, and quality of the material of which it shall be constructed, and the various other matters

in relation to the construction of the same; and, so far as these various matters of discretion are concerned, courts have no power to interfere. The board is responsible to the people who elected them, and to the people alone, for the faithful discharge of the duties with which they have been intrusted.

Dillon, in his work on Municipal Corporations, says: "Powers conferred upon municipal corporations are of two general classes—the one mandatory, the other discretionary. Discretionary powers are not, unless in extraordinary and exceptional instances to restrain gross abuse, subject to judicial control; but duties imperatively enjoined, may, as we have just shown, be enforced by *mandamus*. The general rule of law is this: If the inferior tribunal, corporate body  *  *  has a discretion, and acts and exercises it, this discretion can not be controlled by *mandamus;* but if the inferior tribunal  *  *  *  refuse to act, in cases where the law requires them to act, and the party has no other legal remedy, and where, in justice, there ought to be one, a *mandamus* will lie to set them in motion, to compel action; and, in proper cases, the court will settle the legal principles which should govern, but without controlling the discretion of the subordinate jurisdiction."

In *Hull* v. *The Supervisors of the County of Oneida*, 19 Johns. 259, it was held: Where an inferior tribunal has a discretion, and proceeds to exercise it, the court has no jurisdiction to control that discretion by *mandamus*, but if subordinate public agents refuse to act or entertain the question for their discretion, the court may enforce obedience to the law by a *mandamus*, where no other legal remedy exists. The same principle was announced in *The People* v. *The Supervisors of Albany*, 12 Johns. 414. See, also, *The People* v. *Supervisors of New York*, 5 Wend. 114; *Gourley* v. *Allen*, 5 Cowen, 644; *The King* v. *The Bristol Dock Co.* 13 E. C. L. 139.

In this case the board of supervisors have provided a jail, which has been in use in the county, as appears, for many years. Now, the statute makes it the duty of the board to provide, and keep in repair, a suitable court house and jail.

The complaint here is, that the jail is not suitable; but that is not a question for the courts; it is the province of the board to determine whether the jail is suitable or not.

If the court had power to interfere in this case because the jail was not properly ventilated, and was damp, and the room was too small and endangered the lives and health of the prisoners, upon the same principle, if a county should construct a jail at a cost of $30,000, and some tax-payer of the county was able to show that the cells were too small, or the building insecure, or that money enough had not been expended to make the building as elegant as the wealth of the county demanded, in such a case the court would also have to interfere.

Such would, however, be a clear perversion of the statute. The legislature has given the discretionary power to the board of supervisors, a body elected from each township in the county, by the people, to determine the character and quality of the county buildings, and when that power has been exercised by the board, it is no part of the duty of the courts to interfere by *mandamus*. *City of Ottawa* v. *The People*, 48 Ill. 233.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*