(No. 11559.—Writ denied.)

THE PEOPLE *ex rel.* Maclay Hoyne, State's Attorney, Petitioner, *vs.* J. R. NEWCOMER, Judge, *et al.* Respondents.

*Opinion filed June 20, 1918—Rehearing denied October 2, 1918.*

1. STATE'S ATTORNEYS—*power of State's attorney to enter nolle prosequi is matter of practice.* In England the Attorney General, was the representative of the crown and the power to enter a *nolle prosequi* at his own discretion was a prerogative of the office to which there was no limitation, but the power of a State's attorney to enter a *nolle prosequi* is not a matter of substantive law but of practice.

2. SAME—*powers of State's attorney are not co-extensive with those of the Attorney General.* A State's attorney is a county officer elected for and within the county to perform duties enjoined upon him by statute, and his powers are not co-extensive with those of the Attorney General, who is the chief law officer of the State.

3. SAME—*the State's attorney is not the only person who may prosecute in municipal court an offense punishable by fine.* Under section 27 of the Municipal Court act criminal offenses punishable by a fine, only, may, in the discretion of the court, be prosecuted as in cases before justices of the peace, and the court may commit the prosecution to a person other than the State's attorney if the latter declines to act.

4. SAME—*judge is not a mere ministerial officer for recording the will of the State's attorney.* While the acts of a State's attorney are not purely ministerial but involve in a large measure the exercise of discretion, yet it does not follow that a judge charged with the administration of the law has no authority over the records of his court but is a purely ministerial officer for recording the will of the State's attorney in the conduct of criminal cases.

5. SAME—*when judge cannot be compelled by mandamus to enter a nolle prosequi.* The power of a State's attorney to enter a *nolle prosequi* in the municipal court of Chicago in a case where the punishment is by fine, only, is not absolute but is subject to the approval of the court, and on petition for *mandamus* by a State's attorney to compel a judge of the municipal court to enter a *nolle prosequi* in a prosecution for violating the Sunday-closing law the discretion of the court cannot be reviewed.

FARMER, J., dissenting.

ORIGINAL petition for *mandamus.*

MACLAY HOYNE, State's Attorney, (HENRY A. BERGER, and W. W. DEARMOND, of counsel,) for petitioner.

SAMUEL A. ETTELSON, Corporation Counsel, CHESTER E. CLEVELAND, and FRANK S. RIGHEIMER, for respondent J. R. Newcomer.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In pursuance of leave granted on his motion, Maclay Hoyne, State's attorney of Cook county, filed his petition in the name of the People for a peremptory writ of *mandamus* commanding the respondent John R. Newcomer, judge of the municipal court of Chicago, to enter of record a *nolle prosequi* to an information pending in said court on the complaint of John McMahon against Herbert Noon for a violation of section 259 of division 1 of the Criminal Code, which reads as follows: "Whoever keeps open any tippling house, or place where liquor is sold or given away, upon the first day of the week, commonly called Sunday, shall be fined not exceeding $200," and commanding the respondent Frank P. Danisch, clerk of said court, to record the entry and spread the same upon the records of the court. The petition alleged the pendency of the prosecution, the filing in writing on May 18, 1917, of the *nolle prosequi,* the refusal of the court to enter the same and that no further proceedings had been taken in the cause. The respondent Newcomer answered, admitting the filing of the *nolle prosequi* and his refusal to enter the same but alleging that it was on May 14, 1917, and that he then caused an order to be entered of record in the cause as follows: "The court refuses to allow the entry of the *nolle prosequi* in this case, in which it is admitted by the State's attorney that he has made no investigation, and orders the case set for trial on July 2, 1917, at 9:30 o'clock A. M." The answer further alleged that there were pending in the court when the *nolle*

*prosequi* was presented a great number of cases charging
defendants with violations of section 259, and that the re-
fusal to enter the *nolle prosequi* was on the ground that
the relator had refused to prosecute that class of cases and
had failed and refused to prosecute a single one out of about
450 cases of violations of the section, and insisted on dis-
missing all of them without having investigated the facts
as to the guilt of any of the parties.   A replication was
filed, denying that the relator at any time or place admit-
ted that he made no investigation of the facts in the cause
or that the *nolle prosequi* was filed on May 14. but alleging
that it was filed on May 18, and that no proceedings were
had on May 14 except a continuance of the cause.   The
rejoinder to the replication re-affirmed that the State's at-
torney did admit that he made no investigation of the facts
in the cause, and issue was taken on that fact by the sur-
rejoinder.   The court appointed John T. Richards, a mem-
ber of the bar of this court, a special commissioner to take
the evidence and report the same to this court, and the evi-
dence was taken and reported in pursuance to the reference.

The facts proved were in substance as follows:  A great
many keepers of saloons in the city of Chicago had been ar-
rested for violating section 259, and on February 26, 1917,
150 such cases were pending before another judge of the
municipal court in which defendants demanded jury trials,
and an assistant of the relator then entered a *nolle prosequi*
in each of those cases disposing summarily of all of them.
Cases of the same kind continued to accumulate until April
30, 1917, when there were about 300 pending, and they
were called up before the respondent John R. Newcomer.
The cases being called up, an assistant of the relator said
that he was about to enter a *nolle prosequi* in all cases in
which the charge was a violation of section 259.   There was
considerable discussion between the assistant and the court
as to whether there had been any investigation of the facts
in those cases, in the course of which the court stated that

a *nolle prosequi* would be allowed in every case that had been investigated and as to all those cases in which it was admitted there had been no investigation the *nolle prosequi* would be refused. Nothing further seems to have been done on that day. On May 14, 1917, there were further proceedings concerning the same cases, and of practically the same nature, before the respondent Newcomer, and on May 18, 1917, when there were pending about 400 cases, the case against Herbert Noon was selected and a *nolle prosequi* filed, which the court refused to enter. It was then stated to the court that all the cases had been investigated. The facts concerning such an investigation and the attitude of the relator toward the same were as follows:

There had been a considerable number of prosecutions before justices of the peace in the country districts outside of Chicago on complaint of individuals and there had been a conviction in one case. The relator sent an assistant out to the justices and dismissed all those cases. The relator caused an index card system to be made up of cases of that kind in the municipal court and about 360 cards were prepared. Notices were sent to the defendants to appear before the relator and answer various questions, among which were their nationality and politics and their defenses to the accusations against them. There were 100 or more statements by the defendants to the questions, which statements were taken down and written by the relator's assistants. After this had been done an order was issued on May 2, 1917, to the commanding officers of the police force to direct policemen having violations of the section in charge to appear at the office of the relator on May 3. There were about 300 statements, signed by police officers and complaining witnesses, presented to the relator showing violations of the law. The relator presented to the grand jury the cases, and the grand jury voted "no bills," and made a very lengthy report giving the views of the grand jury as to the propriety of the relator prosecuting such cases. The

conclusion stated by the grand jury was that the cases might be adequately dealt with otherwise than by criminal prosecutions; that they had inquired into the power of the mayor to revoke licenses and compared the penalty with the loss of a license, and had concluded that the State's attorney should not take his time in prosecuting such cases. A list of cases was given which had been examined by the grand jury, with the statement that they had not had time and deemed it useless to hear evidence in other cases, and the grand jury recommended that the mayor should enforce the law and the relator should not spend his time in that way.

The statement signed by police officers and complaining witnesses showed clear violations of the law. The relator testified that he had never declared that he would not prosecute violations of section 259, but that he refused to prosecute them on account of the attitude of the people, generally, in Chicago, as shown by verdicts of juries in prosecutions conducted by a former State's attorney before the relator came into office, in 1912; that he viewed these prosecutions with suspicion because they were instituted without consultation with him; that he had been informed by Anton J. Cermak, chief bailiff of the municipal court, who was secretary of the United Societies, that the keepers of some saloons were prosecuted and others were not molested; that Cermak and his society were enemies of the law and engaged in preventing its enforcement; that he did not believe the cases were started in good faith; that in the prosecutions by the former State's attorney before 1912 the attorney representing the brewers had been successful in defeating the law by insisting that the people in Chicago were not in favor of it and that it was not in force there; that he sent all the cases pending before respondent Newcomer to the grand jury, and for these reasons he did not intend to prosecute the cases.

The petition alleged as a conclusion of law that the relator, by virtue of his office as State's attorney of Cook

county, has an absolute right to enter a *nolle prosequi* in any criminal case and that the court acts in a purely ministerial capacity in entering the *nolle prosequi* and discharging the defendant, and this conclusion of the law was denied by the answer. The argument for the relator in support of the petition is, that as State's attorney he possesses all the powers possessed by an Attorney General in England; that he has absolute power to enter a *nolle prosequi* in any criminal case at any time; that the court is not responsible in any manner for an abuse of the power and that he is independent and absolutely free from judicial interference or control; that there is no requirement of law that he shall investigate the facts of any case and no power in the court to require him to give grounds or reasons for his action, and that such power of the State's attorney necessarily results from the adoption, by statute, of the common law of England so far as the same is applicable and of a general nature.

So far as the adoption of the common law is concerned, the power of the Attorney General in England was not a matter of substantive law but of practice and prerogative. He was the representative of the crown, and the power to enter a *nolle prosequi* in criminal cases which were set on foot by private persons was a prerogative of his office to which there was no limitation. (*Regina* v. *Allen,* 1 Best & S. 850; *Regina* v. *Dunn,* 1 Car. & K. 730.) Very early in the judicial history of the United States it was held by the Supreme Court of Massachusetts in *Commonwealth* v. *Wheeler,* 2 Mass. 172, that the district attorney had absolute power to enter a *nolle prosequi* upon his official responsibility without the approval or intervention of the court; that the power to enter a *nolle prosequi* to an information was very ancient but to indictments it began in the latter end of the reign of Charles II, and that the district attorney had the same power which had been exercised by the Attorney General in England. That decision was followed in *Commonwealth* v. *Smith,* 98 Mass. 10, *Commonwealth* v.

*Scott,* 121 id. 33, and *Lizotte* v. *Dolaska,* 200 id. 327.  In the latter case the court said that the district attorney, alone, is answerable for the exercise of his discretion, and it is presumed that he will act under such a heavy sense of obligation for enforcement of the law and sensitive consciousness of important public duty that no wrongful act would be committed.  While, however, the general statement was made and repeated that the district attorney had the powers exercised at common law by the Attorney General in England, the court in *Commonwealth* v. *Tuck,* 37 Mass. 356, set at least one limitation upon such power by holding that after the jury are empaneled at the trial a *nolle prosequi* cannot be entered without the consent of the defendant.

Quite naturally the decision of the Massachusetts Supreme Court was regarded as a precedent and followed in some other States, but generally with limitations and qualifications.  In *State* v. *Tufts,* 56 N. H. 137, the court said that the prosecuting officer had power, by virtue of his office, to enter a *nolle prosequi,* but if an extreme case should arise, as where it should be made to appear to the court that the prosecuting officer is acting corruptly, the court may be justified in refusing to permit a *nolle prosequi* to be entered until the public authorities might remedy the evil.  In *Rogers* v. *Hill,* 2 R. I. 496, the power was conceded to the Attorney General by virtue of the constitution and a practice existing long anterior to the adoption of the constitution.  In Georgia, by statute, the prosecutor cannot dismiss a prosecution without the concurrence of the court. (*Newsom* v. *State,* 2 Ga. 60; *Durham* v. *State,* 9 id. 306; *Stathan* v. *State,* 41 id. 507.)  But in the latter case the court said that before the passage of the statute there was no authority of the solicitor general to end the prosecution, at his option, without the consent of the court; that the State was the party prosecuting and the solicitor general only an agent to carry on the proceeding, and that he had not, and ought not to have, unlimited power over it.  In

*People* v. *District Court,* 23 Colo. 466, the Supreme Court of Colorado was of the opinion that the mantle of the Attorney General of England had descended upon the several district attorneys of that State and no limitation of their power was stated. In *People* v. *McLeod,* 1 Hill, 377, the court considered that the Attorney General still had common law power, but the legislature had provided that it should not be lawful for any district attorney to enter a *nolle prosequi,* or in any other way discontinue or abandon the prosecution without leave of the court having jurisdiction to try the offense charged. In *State* v. *Thompson,* 3 Hawks, (N. C.) 613, the court said that it seemed from the authorities that the Attorney General had a discretionary power to enter a *nolle prosequi,* but that the court would certainly interfere with the exercise of the power if it were oppressively used, but in *State* v. *Moody,* 63 N. C. 529, the court held the rule in that State to be that the entering of a *nolle prosequi* was within the control of the court, but it was usually and properly left to the discretion of the solicitor. In *Anonymous,* 1 Va. Cas. 139, it was decided in 1803 that the district attorney had no right to enter a *nolle prosequi* without the consent of the court, and by that decision a practice was established which has since been followed in that State and in West Virginia. (*Lindsey* v. *Commonwealth,* 2 Va. Cas. 345; *Commonwealth* v. *Adcock,* 8 Gratt. 663; *Dunham* v. *Robertson,* 72 W. Va. 243.) In Indiana, by statute, the consent of the court must be obtained. (*Halloren* v. *State,* 80 Ind. 586.) In Louisiana it has been held that before a jury is empaneled the Attorney General possesses arbitrary control over the indictment and may enter a *nolle prosequi* at his pleasure without the consent of the court, but on the trial of the cause the court has control, and between the verdict and sentence the pardoning power supervenes. (*State* v. *Moise,* 48 La. Ann. 109.) As a question of practice it is held in New Jersey that the power to enter a *nolle prosequi* exists as at common law in the At-

torney General or the several prosecutors, who for that purpose stand in his stead. *State* v. *Hickling,* 45 N. J. L. 152.

It will be seen that there is no uniformity of decision as to practice on the power of the State's attorney to enter a *nolle prosequi* without the consent of the court, and the rule that he has absolute power in that respect is not general, although, perhaps, the numerical weight of authority is in favor of such a rule in the absence of a statute, where the entry is made before the trial begins. (12 Cyc. 375; 1 Bishop's New Crim. Proc. sec. 396; Wharton's Crim. Pl. & Pr. sec. 838.) In some States it has been deemed essential to the public interest to limit the power of the State's attorney by statute and in others the limitation has resulted from the practice of the courts, while in others the general power has been declared with limitations upon its exercise. There is no statute in this State regulating the entry of a *nolle prosequi* and it does not appear what the practice has been, except that the motion has been made and a *nolle prosequi* allowed and entered by the court. In *Cunningham* v. *People,* 195 Ill. 550, the court did not regard it necessary to enter into a discussion as to the power of the State's attorney or the discretion resting in the court to control the disposition of criminal causes pending before it, but said it was unquestionably within the power of the court to decline to permit the State's attorney, in the midst of his argument to the jury, to enter a *nolle prosequi* as to a portion of the defendants on trial. So far as known to the court, a difference between a State's attorney and the court as to the entry of a *nolle prosequi* has not arisen. The court will not consider the powers of the Attorney General of the State, who under our constitution is a State officer and a member of the executive department of the State representing the sovereignty of the people, but does not regard the powers of the State's attorney as co-extensive with those of the Attorney General, who is a chief law officer of the State and head of the legal department. (*Fergus*

v. *Russel,* 270 Ill. 304.) The State's attorney is a county officer elected for and within a county to perform his duties therein and is by statute charged with certain duties. (*Cook County* v. *Healy,* 222 Ill. 310.) His duty in criminal cases is limited to commencing and prosecuting cases in courts of record and attending before justices of the peace and prosecuting charges of felony, or misdemeanors for which the defendant is required to be recognized to appear before a court of record. The duty of the relator did not extend to attending prosecutions, under section 259, before justices of the peace outside of Chicago, and there was no necessity of the grand jury considering cases of the violation of section 259 punishable by fine only, which could be prosecuted by anyone, and were, in fact, being prosecuted. The acts of the State's attorney are not purely ministerial but involve in a large measure the exercise of discretion as a minister of justice, but it does not follow that the court charged with the administration of the law has no authority over the records of his court but is a purely ministerial officer for recording the will of the State's attorney. There is a presumption that the State's attorney performs the functions of his office according to law and that he does his duty, which is a presumption regarding all officers but is not conclusive. The fact that there may be a prosecution against a State's attorney for misconduct in refusing to prosecute criminals affords no adequate remedy to the people for the injury and wrong done by a refusal to prosecute and the consequent prevalence of crime. Whether a State's attorney can be compelled to institute a criminal prosecution is not here involved, but the Supreme Court of Kansas, in *State* v. *Foster,* 32 Kan. 14, in holding that a prosecuting attorney could not use his discretion in prosecutions because of the sentiment in the prosecution of a certain class of cases, said that he is the officer upon whom the State relies for the prosecution of all criminal offenses within his jurisdiction; that if he fails or refuses to act the law is voice-

less and powerless, and that it is paralyzed and protects no one needing protection and punishes no one needing punishment. The court further said: "If a county attorney will refuse to act in one particular class of criminal offenses on account of the opposition to be expected from the community in which he resides he may refuse to act for like cause in all criminal offenses. Thus, if he has discretion to say he will not attempt to enforce the prohibitory law in his county he has also the discretion to refuse to enforce the statute relating to murder, larceny, forgery and other crimes."

The disastrous consequences of endowing a State's attorney with absolute and unlimited power to enter a *nolle prosequi* in all prosecutions of a certain class of crimes and leaving the people to the remedy of a prosecution against him for malfeasance in office are apparent. Whether or not the relator can be required to prosecute a case in the municipal or any other court, section 27 of the Municipal Court act provides that criminal cases in which the punishment is by fine, only, may in the discretion of the court be prosecuted by a complainant as is provided by law for the prosecution of criminal cases before justices of the peace, so that the court has a discretion in any case where the State's attorney refuses to perform the duty enjoined upon him by law and may commit the prosecution to someone else. If a State's attorney has absolute and uncontrolled power to enter a *nolle prosequi* upon his official responsibility in one case, of course he has the same power in two, three or four hundred, as in this instance; but we regard it as essential to the due administration of justice and the protection of the people by the enforcement of criminal laws that he should not have such power but the consent and approval of the court should be required.

Having concluded that the respondent John R. Newcomer, as judge of the municipal court, was invested with power to refuse to enter the *nolle prosequi* and discharge

the defendant in the exercise of his discretion, the writ of *mandamus* cannot be awarded to coerce the exercise of that discretion by commanding him to enter the *nolle prosequi* filed in the cause by the relator. The exercise of his discretion is not reviewable in this proceeding and will not be controlled by *mandamus.* (*People* v. *LaSalle County,* 84 Ill. 303; *People* v. *VanCleave,* 183 id. 330.) The act which the relator asks to have performed is not a mere ministerial duty and the facts do not show any arbitrary abuse of discretion.

The writ is denied.                               *Writ denied.*

Mr. JUSTICE FARMER, dissenting.