(No. 15600.—Reversed and remanded.)
THE COUNTY OF COOK, Defendant in Error, *vs.* THE CITY
OF CHICAGO, Plaintiff in Error.

*Opinion filed February 19, 1924.*

1. PLEADING—*when bill to enjoin enforcement of building ordinances is demurrable.* Ordinances are presumed to be reasonable, and in a bill to enjoin the enforcement of building ordinances in the erection of a county jail, statements that the ordinances were not suited to the erection of a county jail and that it would be impossible to comply with them in the construction of the jail are mere conclusions of the pleader, and the substance of the ordinances objected to should be set out, so that the court may determine, on demurrer, whether the objections are well founded.

2. MUNICIPAL CORPORATIONS—*what is included in police power of cities and villages.* Under the police power of the State, cities and villages may enact reasonable ordinances to preserve health, suppress nuisances, prevent fires, regulate the use of dangerous articles, and for similar purposes.

3. SAME—*fourteenth amendment to Federal constitution does not impair police power of State.* The police power of the State is the law of overruling necessity for the preservation of the general welfare and is not impaired by the fourteenth amendment to the Federal constitution; but every citizen holds his property subject to the proper exercise of such power, either by the State legislature or by public or municipal corporations, to which the legislature has delegated the power.

4. SAME—*cities have power to make regulations to prevent fires.* The prevention of fires in incorporated towns and cities is a matter for local regulation and is a part of the police power of the. city, and a general grant of power to pass ordinances for the welfare of the city includes fire regulations, so far as not inconsistent with State legislation on the subject.

5. SAME—*what are municipal corporations proper.* Municipal corporations proper are those cities, towns or villages which are called into existence either at the direct request or by consent of the persons composing them, principally for the advantage and convenience of the people of the locality.

6. SAME—*what are quasi municipal corporations.* Quasi municipal corporations, such as counties and townships, are local organizations created by general law, without the consent of the inhabitants of the locality, for the purpose of aiding the civil and political administration of the State government.

7. SAME—*distinction between powers and liabilities of counties and municipal corporations.* The powers and functions of county and township organizations, as distinguished from municipal corporations, have a direct and exclusive bearing on and reference to the general, rather than local, policy of the State government, and as counties have no powers or liabilities except as prescribed by the general law creating them, and are compulsory rather than voluntary organizations, they, unlike municipal corporations, cannot be sued for damages except in relation to contracts which the general law authorizes them to make.

8. SAME—*erection of a jail is part of duties of county as an agency of State.* It is a part of the duties of the county, as an agency of the State government, to erect or otherwise provide for and keep in repair a county jail, court house and other necessary county buildings, as the entire State is interested in the enforcement of the law in each county.

9. SAME—*police power of State is not given to counties under the general law.* While the county is an agency of the State it is vested with only the powers conferred upon it by the State, and the powers granted to counties under the general law do not include the police power of the State, but the exercise of such power as applied to localities is delegated to the cities, villages and incorporated towns.

10. SAME—*county must observe reasonable exercise of police power by city.* The police power delegated to cities, villages and incorporated towns, and which includes regulations for the prevention of fires, extends to all buildings within the city limits, including county buildings, and the county is required to observe any reasonable exercise of police power by the city.

11. SAME—*what power is conferred by paragraph 63 of article 5 of the Cities and Villages act in regard to buildings.* Paragraph 63 of article 5 of the Cities and Villages act, empowering municipal corporations "to cause all such buildings and inclosures as may be in a dangerous state to be put in a safe condition," confers upon the city council such power over all buildings erected within the city, including those of the county.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, (ALBERT H. VEEDER, of counsel,) for plaintiff in error.

ROBERT E. CROWE, State's Attorney, and GEORGE E. GORMAN, (HAYDEN N. BELL, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The county of Cook on December 10, 1921, filed its bill in the superior court of Cook county seeking to enjoin the city of Chicago from enforcing its fire and building ordinances against the county concerning the construction of a county jail located within the territorial limits of the city. The grounds upon which such injunction is sought are, that "these ordinances and requirements are not suitable to the said jail and that it will be impossible to comply with the ordinances in the building of said jail." The injunction was also sought on the general ground that the city did not have a right to enforce its ordinances against the county. The city filed a general demurrer to the bill. Upon hearing thereon it was held that the city did not have police power over the construction of buildings erected by the county, and, evidently holding that the statement of the ordinances in the bill was sufficient, the court overruled the demurrer. The Appellate Court affirmed the decree. Two questions, therefore, are presented here: First, is the unreasonableness of the city ordinances sufficiently pleaded? and second, may the city, under its police power, regulate the construction of a county jail so far as fire hazards are concerned?

The statement in the bill that the ordinances of the city of Chicago were not suited to the erection of a county jail, and that it would be impossible to comply with them in the construction of the jail, were mere conclusions of the pleader. The substance of the part of, an ordinance objected to should be set out, so the court may see, on reading it, whether or not the claim that it is not suited and is unreasonable is well founded. The presumption is that an ordinance is reasonable. (*People v. Cregier*, 138 Ill. 401; *Illinois Central Railroad Co. v. Ashline*, 171 id. 313.)

While it cannot be contended that either the county or an individual is amenable to an unreasonable ordinance, the court cannot take the statement of a conclusion in that regard as sufficient pleading on a bill of this character. The bill was therefore demurrable on that ground.

The principal question argued in the case is whether or not the city council has power to require an observance of its fire regulations by the county in the building of a county jail. This question has never been passed upon in this State, and but few cases have been cited by counsel representing the parties to this proceeding in which the matter has been passed upon in other States. It becomes necessary, therefore, to review some of the underlying principles governing the police power granted to cities and counties under the law.

Among the powers exercised by municipalities are what are known as the police powers of the State. These powers rest in the State and may be delegated to municipal corporations created by the State, to be exercised for the welfare, safety and health of the public. Under the police power cities and villages may enact reasonable ordinances to preserve health, suppress nuisances, prevent fires, regulate the use and storing of dangerous articles, control markets, and similar uses and purposes. The police power is not impaired by the fourteenth amendment to the constitution of the United States, (*Barbier* v. *Connolly,* 113 U. S. 27,) but every citizen holds his property subject to the proper exercise of the police power, either by the State legislature or by public or municipal corporations, to which the legislature has delegated that power. This power rests upon the principle that one may not so use his property as unreasonably to injure others. These regulations rest upon the maxim *salus populi est suprema lex.*

An ordinance prohibiting washing and ironing in public laundries within a specified district and within specified hours was held a valid exercise of the police power. (*Soon*

*Hing* v. *Crowley,* 113 U. S. 703.) In *Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746, (known as the *Slaughter House case,*) the right of the city, under the police power, to regulate the operation of slaughter houses was upheld. Under the police power, cities may destroy buildings to prevent the spread of conflagration. This right existed at common law, and the owner was entitled to no compensation. (2 Kent's Com. 339.) The prevention of damage by fire is an object within the scope of municipal authority, either by express grant or by the power delegated to the city to make police regulations.

It was held in *Pye* v. *Peterson,* 45 Tex. 312, that a general grant of power to a city to pass such ordinances, not inconsistent with the laws of the State, as shall be needful for the government, interest, welfare and good order of the corporation, did not authorize the city to establish fire limits and regulate the character of buildings within such limits. It is, however, generally regarded that the prevention of fires in incorporated towns and cities is a matter for local regulation and that it belongs to the ordinary police powers of the city, and unless such a course is inconsistent with the legislation of the State touching the subject, a general grant of police powers to pass ordinances for the welfare of the city will also include fire regulation. 1 Dillon on Mun. Corp.—4th ed.—secs. 143, 405, note, and cases cited.

In *Chicago Packing Co.* v. *City of Chicago,* 88 Ill. 221, where an ordinance by the city of Chicago prohibiting slaughter houses within one mile of the city limits was attacked on the ground that it was not within the police power of the city, this court upheld the ordinance on the ground that to protect the health and lives of a large number of people living in one community the State had power to confer, and has conferred, on cities and villages the right to regulate such instrumentalities as slaughter houses, even

though the territory over which the jurisdiction of the ordinance extended embraced other municipalities.

Since the early case of *Commonwealth* v. *Tewksbury*, 11 Metc. 58, the right to restrain owners of lands in cities from erecting buildings contrary to fire regulations has been established by many decisions. (*Wadleigh* v. *Gilman*, 3 Fairf. 403; *King* v. *Davenport*, 98 Ill. 305.) In the last case cited the court upheld an ordinance regulating fire limits, and the character of buildings to be erected within such limits, as a part of the police power delegated to cities. Such power was likewise recognized in *Village of Louisville* v. *Webster*, 108 Ill. 414, though it was held in that case that the ordinance was not within the police power given the city by the legislature.

The legislature, by statute in this State, has conferred on municipal corporations, such as cities, villages and incorporated towns, the police power to prescribe fire regulations and to regulate buildings within their limits in respect to fire protection. Cahill's Stat. 1923, chap. 24, art. 5, pars. 61, 62, 63.

There is a distinction to be borne in mind between municipal corporations proper, such as exist by charters issued by the State, as incorporated towns, cities and villages voluntarily organized under the general Incorporation act, and corporations such as counties and townships, which are frequently referred to as involuntary *quasi* corporations. Municipal corporations are those called into existence either at the direct request or by consent of the persons composing them. *Quasi* municipal corporations, such as counties and townships, are at most but local organizations, which are created by general law, without the consent of the inhabitants thereof, for the purpose of the civil and political administration of government, and they are invested with but few characteristics of corporate existence. They are, in other words, local subdivisions of the State created by the sovereign power of the State of its own will, without

regard to the wishes of the people inhabiting them. A municipal corporation is created principally for the advantage and convenience of the people of the locality. County and township organizations are created in this State with a view to aid in carrying out the policy of the State at large for the administration of matters of political government, finance, education, taxing, care of the poor, military organizations, means of travel and the administration of justice. The powers and functions of county and township organizations, therefore, as distinguished from municipal corporations, have a direct and exclusive bearing on and reference to the general, rather than local, policy of government of the State. (*Hamilton Co.* v. *Mighels,* 7 Ohio St. 109; *Askew* v. *Hale,* 54 Ala. 639; *County* v. *Chattaroi Railroad Co.* 81 Ky. 225; *Manuel* v. *Commissioners,* 98 N. C. 9; *Cathcart* v. *Comstock,* 56 Wis. 590; 1 Dillon on Mun. Corp.—4th ed.—sec. 23.) Counties and towns, being purely auxiliaries of the State, owe their creation to the general statutes of the State, which confer upon them all the powers which they possess and prescribe all the duties and liabilities to which they are subject. They have been referred to as ranking low in the scale or grade of corporate existence, and for that reason are frequently termed *quasi* corporations. *Hamilton County* v. *Garrett,* 62 Tex. 602; *Union Township* v. *Gibboney,* 94 Pa. St. 534.

Under the act to incorporate counties, approved January 3, 1827, counties are constituted a body corporate and politic, with power to make and enter into contracts and to sue and be sued in relation to such contracts, and by sections 24 and 25 of the Counties act (Smith's Stat. 1923, p. 529,) numerous other powers necessary to the exercise of corporate powers of counties are there granted, not, however, including police powers. It has been uniformly held that a right of action for damages does not lie against a county or township. The ground upon which this doctrine

rests is, that these organizations are not voluntary but compulsory; not for the benefit of individuals who have asked for such a corporation, but for the public generally.

The distinction between counties and townships, or *quasi* corporations, and incorporated cities, villages and towns, was laid down in the early case of *Russel* v. *Men Dwelling in the County of Devon,* 2 Durn. & East, 311. It was there held that while an action would lie by an individual against another for injury the former had received, on the ground of personal liability therefor, and while for that reason an action for damages can be maintained against municipal corporations because of their voluntary character, yet as to *quasi* corporations, such as townships and counties, such action does not lie against them in the absence of a statute authorizing it. A distinction is drawn between the character of these organizations in *Riddle* v. *Proprietor of Locks,* 7 Mass. 186, where it was held that because of the limited character and powers and the involuntary nature of *quasi* corporations the same may not be sued for damages. A like conclusion is reached in *Bartlett* v. *Crozier,* 17 Johns. 446. This is likewise the rule in this State as established by a long line of decisions. (*Hedges* v. *County of Madison,* 1 Gilm. 567; *Browning* v. *City of Springfield,* 17 Ill. 143; *Town of Waltham* v. *Kemper,* 55 id. 346; *White* v. *County of Bond,* 58 id. 297; *Symonds* v. *Board of Supervisors of Clay County,* 71 id. 355; *Hollenbeck* v. *County of Winnebago,* 95 id. 148.) In the last cited case attention is called to the fact that counties are clothed with but few corporate powers, and these are not of a private character but rather a part of the political government of the State; that a county can, however, sue and be sued and has the power to purchase and hold real estate; that the county board has power to manage county funds and county business, settle accounts against the county and collect taxes for county purposes. It is the duty of the county to erect

311—16

or otherwise provide, when necessary and finances will justify it, and to keep in repair, a suitable court house, jail and other necessary county buildings. These, with a few other similar provisions, constitute the duties and powers delegated to the county and county boards by the legislature. There is no delegation of police power to the counties and townships of the State, and it would seem clear, therefore, that by the delegation of the police power to cities, villages and incorporated towns the legislature intended that the exercise of that power over the property and inhabitants within the limits of the city or village should be by that municipality, subject, of course, to the right of the State, of which it is never divested, to exercise the police power.

In *Pasadena School District* v. *City of Pasadena,* 166 Cal. 7, the question arose as to whether or not the school district, a *quasi* municipal corporation, was governed by the fire and building ordinances of the city of Pasadena, a municipal corporation, and whether it was required to pay fees for inspection. Under the constitution of that State power is conferred upon each county, city, town or township to make and enforce within its limits, police, sanitary and other regulations not in conflict with the general laws. The school district contended that as it was an independent governmental agency of the State, created under the general law, by which school property within the district was committed to its control, its property was not subject to control by the police regulations of the city. The argument was, that since by general law the management and control of school property was given to such districts, including the power to build school houses, which were required to be approved by the county superintendent of schools and the school board, there was to be inferred, as necessary to the application of such power, police power in the school district to regulate sanitation and fire protection within the district, and that such power being derived from a general

law could not be interfered with by the municipality. It was not there contended that any general law existed which expressly conferred police powers upon the school district. It was there held that school districts being *quasi* municipal corporations, their powers were limited to the express grants of power given by the legislature; that since the constitution had given to the city the right to impose reasonable police regulations, a school district desiring to build a school building within the limits of the city was subject to such regulations. In answer to the argument that if the power of the city authorities be sustained the effect would be to deprive the State of its power to regulate the building of schools, it was held that while the State, in the exercise of its police power, undoubtedly might provide a complete system of regulation for the protection of public health, safety and comfort in the erection of the school buildings of the State, such had not been done, and that it was not intended by the legislature to empower the trustees of school districts to exercise such police power; that a school district which embraces territory included in a densely populated city, or whose territory, as such, is exclusively within the city, should be made subject to reasonable regulations for the benefit of the entire city concerning fire protection; that the legislature recognized that in the matter of public safety school districts should be subject to the same building regulations as governed others erecting structures in the city, and that the only way it could be relieved from such control would be by general law.

In *Kentucky Institution for the Blind* v. *Louisville,* 123 Ky. 767, it was held that the State of Kentucky was not subject to the police powers of the city of Louisville in the matter of erection and control of buildings for the State Institution for the Blind; that the giving of the police power by the legislature to the municipality did not take that power from the State itself.

In *Samuels* v. *Mayor of Nashville,* 3 Sneed, (Tenn.) 298, the plaintiff in error was sued to recover a fine for erecting horse-racks around the court house in the city of Nashville, contrary to an ordinance of the city. The defense was that plaintiff in error was acting under the order of the county court of the county of Davidson to put the posts and hitch-racks in the court house square for the hitching of horses. The question in the case was one of paramount authority between county and city. The argument was used that the public square belongs to the county and is under the control of the county court and therefore not subject to the police regulations of the city. It was there held, however, that ownership of the square was not material; that regardless of who owned the land, the county could not exercise its power so as to inflict a nuisance upon the citizens of the city; that the power to prevent or abate a nuisance must abide in the local authorities where necessity for self-preservation exists; that the rule that everyone must use his own property so as not to injure others was binding upon the county; that in the exercise of the police power the city controlled the matter of nuisances, and the fact that the plaintiff in error was authorized and directed by the county court to erect the hitching posts did not prevent the city from enforcing its ordinance against him.

In *Village of Coulterville* v. *Gillen,* 72 Ill. 599, an action was brought against Gillen to recover a penalty for violation of an ordinance of the incorporated village against the sale of intoxicating liquors. The defense was that the county had issued a grocery license to the defendant authorizing him to sell spirituous liquors in Coulterville for one year, under a statute in existence at that time. The act also provided that the president and trustees of incorporated towns should have the exclusive privilege of granting licenses to groceries within their incorporated limits, and it was held that the license issued by the county was not a

defense, for the reason that the county had no authority to interfere with the village in the matter.

In *Bowers* v. *Wright,* 4 W. N. C. (Pa.) 460, a statute had been passed conferring upon the board of education of the city of Philadelphia power to erect a school house and build the same, provided "all matters in connection with the erection of said school house shall be under the direction of said board of public education." By another statute power was granted to the board of building inspectors of the city of Philadelphia to control the matter of granting permits for the erection of buildings, and the question was whether the board of education was required to obtain a permit from the board of building inspectors before erecting a school building. It was there held that the board was so required and that it was subject to the police power vested in the city and could not build a school house which did not comply with the regulations of the building inspectors.

In *Llano* v. *Llano County,* 5 Tex. Civ. App. 132, (23 S. W. 1008,) it was held that the city may, under the police power, prevent the county from so using a court house square as to create a nuisance.

In *People* v. *Board of Supervisors of LaSalle County,* 84 Ill. 303, it was held that *mandamus* will lie to compel the county board to construct a jail. It was said, however, that the kind of jail to be provided must necessarily be left to the discretion of the board, the court there saying: "They have the sole power to determine the size, cost and quality of the material of which it shall be constructed and the various other matters in relation to the construction of the same." It was held that the court had no authority to compel the county to make the county jail sanitary. No question of the police power of the city arose in that case.

In *County of Mercer* v. *Wolff,* 237 Ill. 74, it was held that the duty resting on the board of supervisors to erect a county jail is imperative, but that the board has a dis-

cretion as to the kind, cost, size and other conditions of the building.

Counties are *quasi* public municipal corporations created for the purpose of convenient local government and exist only for public purposes connected with the administration of the State government. (*Millikin* v. *County of Edgar,* 142 Ill. 528; *Wetherell* v. *Devine,* 116 id. 631; *Marion County* v. *Lear,* 108 id. 343.) The duty to erect a county jail rests upon the relation of the county to the State. Its use concerns the public at large, for the whole State is interested in the enforcement of the law in each county, and the county acts in the building of the jail as an agency of the State. In *Board of Commissioners* v. *Persons,* 116 S. E. (Ga.) 538, it was held that a county may be *mandamused* to require it to make the county jail safe and sanitary and put it in a condition that would not jeopardize the lives or health of the prisoners.

The powers granted to the counties under the general law do not include the police power. That power is granted to cities and villages under the act concerning their incorporation and by that statute it extends to all buildings within its limits. The county is not required to build a court house within the limits of any city but may build it elsewhere if directed so to do by the people, or may maintain or condemn land of its own volition without a vote of the people. (*County of Mercer* v. *Wolff, supra.*) When the county builds a court house within the limits of a city it may be held that in so doing it acts voluntarily. No good reason, therefore, is perceived why it should not be made amenable to the reasonable police regulations imposed by the city in the interest of the general welfare.

It is urged that the county is an arm of the State to which there has been committed the control of the county buildings, and that it is not, therefore, subject to the police power of the city. While the county is an agency of the State it is likewise a creature of the State vested with only

the powers conferred upon it by the State. It is not correct, therefore, to say that the county is a part of the State in the exercise of police power.

The police power of the State has been said to be the law of overruling necessity, for the preservation of the general welfare. In *Chicago Packing Co.* v. *City of Chicago, supra,* it was held, as we have seen, that the city has the right to require that slaughter and packing houses be maintained not less than one mile from the city limits, even though the town of Lake, which was an incorporated town, had given a permit to the packing company to operate its business in said town at a point nearer than one mile from the city limits of Chicago. This court there said: "Did they [the legislature] intend that the city should be annoyed and injured in health and comfort by the exercise of the power of a corporation with a comparatively sparse population and to submit to have imposed on them such nuisances as the town of Lake might impose by licensing them? We cannot suppose the General Assembly so disregardful of the health and comfort of such great numbers of people, but, on the contrary, we must suppose it was intended that the people of Chicago, and other cities under like circumstances, should have the means of protecting themselves against such intolerable wrongs as might thus be inflicted upon them. We must conclude that the General Assembly, rather than subject our large cities to such hazards from smaller municipalities in their immediate vicinity, would have repealed the charters of the latter or at least have curtailed their powers."

We are of the opinion that the police power delegated to the city must be construed, as between the county and the city, as a delegation of a power to the latter which the former is expected to observe. What was said in the cases of *People* v. *Board of Supervisors of LaSalle County, supra,* and *County of Mercer* v. *Wolff, supra,* had to do with the general power of a county to determine the character, size

and location of a county court house and a jail. The matter of the police power or the obligation of the county to observe the reasonable exercise of that power delegated to cities in which county buildings are located was not there discussed. We are of the opinion that in enacting paragraph 63 of article 5 of the Cities and Villages act, and in using the language, "and to cause all such buildings and inclosures as may be in a dangerous state to be put in a safe condition," the legislature intended to confer upon the city council such power over all of the buildings erected within the city as the words there indicate, including those of the county or other municipalities located therein.

It was error for the superior court to overrule plaintiff in error's demurrer to the bill. The judgment of the Appellate Court is reversed and the cause remanded to the superior court, with directions to sustain the demurrer.

*Reversed and remanded, with directions.*