CITY OF GROVES et al., Appellants,

v.

PORT ARTHUR INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 6331.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 28, 1963.

Rehearing Denied March 27, 1963.

Black & Provost, Port Arthur, for appellants.

Fuller & Fuller, Port Arthur, for appellee.

HIGHTOWER, Chief Justice.

The sole question presented by this lawsuit is the applicability of building regulations and ordinances of a Home Rule city to building construction of an independent school district. From a declaratory judgment and injunction of the district court adverse to it on the question, City of Groves has appealed. See Port Arthur Independent School District et al. v. Gary et al., Tex.Civ. App., 364 S.W.2d 446, for detailed facts.

It is elementary that City and School District are, each, governmental agencies of the State, and that the Legislature in its plenary power may delegate to either, to the exclusion of the other, the authority to supervise and control the construction of public schools.

School District contends that it is not amenable to the police power of City in the latter's effort to exact a building permit and to enforce its ordinances regarding inspection as construction progresses, by reason of Art. 7, Sec. 1, of our Constitution, Vernon's Ann.St., to-wit:

"A general diffusion of knowledge being essential to preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

Texas Constitution. Art. 7, Sec. 1.

And it also relies upon Art. 2763a, Vernon's Ann.Civ.St., which refers to independent school districts created by special laws [1], the pertinent part of which follows:

"Sec. 2. The Board of Trustees * * * shall thereafter maintain and control the public free schools within said district to the exclusion of every other authority, except in so far as the State Superintendent of Public Instruction and the State Board of Education may be vested with supervisory authority to inspect said Board * * *."

On the other hand, it is City's position that Art. 1175, Sec. 34, V.A.C.S., empowers it, in the exercise of its police power, to enforce its ordinances against School District. Sec. 34 of this article reads:

"To enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants."

A seemingly clear expression of legislative intent to be found on the subject is the enactment of Art. 2898-1 by our Legislature in 1945 whereby it sought to create a State Board of School Safety Supervision " * * * to prevent the unnecessary loss of life and destruction of property due to failure to observe safety practices, rules and procedures in the architectural design of public buildings and schools * * *." This Act prescribed rigid rules, regulations and orders setting up safety standards to be followed in the construction, operation and use of public school buildings, to promote safety of school children and school occupants. It is noteworthy that Sec. 7 of said Act expressly provided that the same would not "authorize the construction of any building, or alteration, change or repair thereof without first obtaining such permit or per-

1. Port Arthur Independent Sc. Dist. reorganized by special law, H.B. 684.

mits as may be required by a valid local ordinance or regulation." Although this article was subsequently repealed as being unconstitutional by reason of a population bracket therein contained, we think it indicative of a Legislative intent that the construction of public schools, in the absence of such a specific regulatory law as Art. 2898-1, should conform to reasonable police powers of a Home Rule city wherein they are located.

There is a paucity of out-of-state decisions on this subject and none exist in Texas. Absent Legislative directives positively providing for the safety of the occupants of our school buildings and those in the near vicinity thereof, we are constrained, by reasons of sound public policy, to follow the holding of the Supreme Court of Missouri in Kansas City v. School Dist. of Kansas City, 356 Mo. 364, 201 S.W.2d 930, wherein the precise question was decided in favor of the police power vested in Kansas City. The constitutional and statutory provisions of the State of Missouri are very similar to those of ours which have been quoted hereinabove. It was said in the Kansas City case, 201 S.W.2d p. 932:

"Since the State through its instrumentality, School District, has constructed public school buildings in the thickly populated areas of Kansas City the State must contemplate there is reposed in itself, in School District, or in City the power and the responsibility of taking measures to protect the people and the property of the people of Kansas City from conflagrations, explosions, smoke nuisances, noxious gases, and casualties which might be caused or occasioned by the facilities of the public school buildings. Now, if City's power to regulate and supervise School District's facilities in the respects herein involved is recognized, City, it seems, should have the right to collect such fees as are reasonable and incidental to and in reimbursement for the necessary expense of the regulatory inspections,

inasmuch as the inspection of School District's facilities by City is made necessary in the full exercise of City's police power by the location of School District's school buildings within the corporate limits of the municipality of Kansas City. Still assuming City has the power to regulate and inspect School District's facilities in the respects herein involved, such a power must include the incidental power to exact inspection fees incidental to the inspections, a part of the regulation. If so, it must follow (and we hold) the fees are but an expense incidental to School District's educational purpose, and a legitimate disbursement of the funds raised for running public schools, due to the circumstance School District's public school buildings are located in a densely populated city. The territorial or corporate limits of School District and City are not coterminous. Part of the area of School District is outside the corporate limits of the municipality, but the fees, we assume, are for inspections of facilities of public school buildings School District has built within the corporate limits of the municipality."

From 201 S.W.2d p. 933 we quote:

"The duty to provide for free public schools is vested by the Constitution in the Legislature. Section 1, Article XI, Constitution of Missouri, 1875; Section 1, Article IX, Constitution of Missouri, 1945. A school district is a 'public corporation' forming an integral part of the State and constituting that instrumentality of the State utilized by the State in discharging its constitutionally invoked governmental function of imparting knowledge to the State's youth. School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S.W.2d 909, and cases therein cited. It has been said a school district is in no sense a municipal corporation with diversified powers, but is a quasi public corporation, 'the arm and instrumen-

tality of the state for one single and noble purpose, viz., to educate the children of the district.' "

And:

"No constitutional or statutory restriction of City's police power as to its application to the regulation of the facilities of public school buildings has been observed by us; and, as we have seen, the State in the exercise of its own powers could have acted or could have expressly enjoined upon or delegated to School District's board of full responsibility of taking particular measures, in connection with School District's school buildings, otherwise within the scope of City's police power. Board of Education v. St. Louis, supra [267 Mo. 356, 184 S.W. 975]. Since the State itself has taken no precautionary measures, and City has been vested with the regulatory and supervisory responsibilities of the exercise of the police power, and School District (having no police power) has not been expressly and specifically given full duty to attend to these responsibilities, we think the Legislature is content in the thought the measures to be taken are within the police power vested in City. State ex rel. Audrain County v. City of Mexico, supra, [355 Mo. 612, 197 S.W.2d 301]; Kansas City v. Fee, 174 Mo.App. 501, 160 S.W. 537; Pasadena School District v. City of Pasadena, 166 Cal. 7, 134 P. 985, 47 L.R.A.,N.S., 892, Ann. Cas.1915B, 1039; Cook County v. Chicago, 311 Ill. 234, 142 N.E. 512, 31 A.L.R. 442. It could be reasonably urged the Legislature is wise in so singly reposing such grave responsibilities in City, in view of the technical experience and advice City's officials and inspectors must have acquired in preparing for and in performing their important duties in connection with the prescribed regulations and regulatory inspections of the facilities of the many buildings of Kansas City. It would also seem reasonable to say that School District enjoys a fine advantage to itself by having the technical and experienced supervision of City's inspectors by which the lives and health of students, teachers and other employees of the schools and School District's property may be the better protected, and with no more disadvantage than the payment of a reasonable inspection fee." See, also, Tex.Atty. Gen.Opp., W.W.—218, 1957, and Cook County v. Chicago, 311 Ill. 234, 142 N.E. 512, 31 A.L.R. 442.

School District relies heavily upon the California Supreme Court decision of Hall v. City of Taft, 47 Cal.2d 177, 302 P.2d 574 (1956), which decision is also precisely in point. That decision was against the City of Taft in respect to the question before us, partly on the basis that Constitutional provisions of California giving any city power to enforce within its limits all local, police, sanitary and other regulations not in conflict with general laws, does not confer upon such cities power to regulate construction of public school buildings. The remainder of said decision was then based upon what we think was very sound principles. It pointed out that there existed in the State of California an "Education Code" by reason of which the construction of school buildings by school districts were not subject to the building regulations of a municipal corporation in which the building is constructed, by reason of the State having completely preempted and occupied the fields by general laws. It will be observed that this California Education Code is in a great many respects identical with the safety regulations sought to be provided for by our Legislature when it first enacted Art. 2898–1, supra, creating the State Board of Schools Safety Supervision. The other decisions upon which School District relies are City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642; Salt Lake City v. Board of Education, 52 Utah 540, 175 P. 654, and Kentucky Inst. for Education of

Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402, 8 L.R.A.,N.S., 553, are similarly distinguishable.

We hold that School District must comply with the ordinances of the City of Groves as they respect the obtaining of building permits, payment of building permit fees and inspection by the City or its agents in the construction of school buildings within the limits of said city.

The judgment and orders of the trial court are therefore reversed and rendered in accordance with this opinion.

Reversed and rendered.