**PORT ARTHUR INDEPENDENT SCHOOL DISTRICT, Petitioner,**

v.

**CITY OF GROVES et al., Respondents.
No. A–9570.**

Supreme Court of Texas.

Feb. 19, 1964.

Rehearing Denied March 25, 1964.

Fuller & Fuller, Port Arthur, for petitioner.

Black & Provost, Port Arthur, for respondents.

HAMILTON, Justice.

Petitioner, Port Arthur Independent School District, is a duly organized district under and by virtue of the constitution and laws of the State of Texas. Respondent, the City of Groves, is a home rule municipality located in Jefferson County, Texas. Petitioner owns certain real property located within the geographical confines of the respondent city, and in accordance with the constitution and statutes of the State of Texas ascertained the necessity for the construction of an elementary school on such property. When such construction project began, the respondent asserted that the petitioner must abide by and conform to certain building ordinances passed by the respondent city making provision for the standards of construction, the obtaining of building permits, and the inspection of the construction work while in progress by officials of the respondent city. Petitioner took the position that as an independent governmental subdivision, such ordinances of respondent were not applicable to it, and

when respondent notified petitioner that the penal provisions of such ordinances would be enforced, which said penal provisions provided in part that each day of construction without a permit constituted a separate violation and that all officials, agents, servants and employees of petitioner would be guilty of a violation, petitioner filed suit in the trial court seeking a declaratory judgment to the effect that such ordinances were invalid and inapplicable as to petitioner and those acting under its authority and for ancillary and injunctive relief against the enforcement of such ordinances. Upon trial in the 60th District Court all relief sought by petitioner was granted, and judgment was entered to the effect that said ordinances were invalid, void and of no force and effect whatsoever as against petitioner and those acting under its authority and permanently enjoining respondent from enforcing or attempting to enforce same.

The City of Groves appealed to the Court of Civil Appeals for the Ninth Supreme Judicial District, which court reversed the judgment of the trial court and rendered judgment in favor of respondent herein. 366 S.W.2d 849. We affirm the judgment of the Court of Civil Appeals.

As stated by the Court of Civil Appeals, the sole question presented by this lawsuit is the applicability of building regulations established by ordinances of a home rule city to building and construction by an independent school district. To narrow the question, it should be stated that there is no question here as to validity of the ordinances as being a proper exercise of the police powers of the city. It is not contended that they are unreasonable or arbitrary. The school's contention is simply that they do not apply to it because the operation of public schools is a function of the State, against which the police power of a municipality cannot be exercised unless the statutes clearly show that such was the intention of the Legislature and that the Legislature has, in fact, given school districts exclusive control of schools.

The authority vested in the Legislature to provide for public free schools is provided by Article VII, Section 1 of our constitution, Vernon's Ann.St., to wit:

"A general diffusion of knowledge being essential to preservation of the liberties and rights of the people, it shall be the duty of the Legislature of this State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

Article 2763a, Vernon's Ann.Civ.St., which refers to independent school districts created by special laws and under which the Port Arthur Independent School District was created, provides in part as follows:

"Sec. 2. The Board of Trustees * * * shall thereafter maintain and control the public free schools within said district to the exclusion of every other authority, except in so far as the State Superintendent of Public Instruction and the State Board of Education may be vested with supervisory authority to instruct said Board * * *."

Article 2752, Tex.Rev.Civ.Stat., provides as follows:

"The trustees of a school district shall contract for the erection of the buildings and superintend the construction of the same * * *."

It is the city's position that Article 1175, Section 34, V.A.C.S., empowers it in the exercise of its police powers to enforce its ordinances against the school district. Section 34 of this article reads:

"To enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants."

There appears to be no case in this state which has passed on the question before us. There are some out of state cases which

have been cited that deal with the question. It appears from an analysis of these cases that the police powers of a municipality are not applicable to the state itself, or its property. Hall v. City of Taft, 47 Cal.2d 177, 302 P.2d 574; Salt Lake City v. Board of Education of Salt Lake City, 52 Utah 540, 175 P. 654; Kentucky Institution for Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402, 8 L.R.A.,N.S., 553; City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642. Neither are police powers applicable to any political subdivision where the Legislature of the state has legislated with reference to the particular matter covered by the ordinance sought to be enforced. Hall v. City of Taft, supra; Board of Education of City of St. Louis v. City of St. Louis, 267 Mo. 356, 184 S.W. 975. The police power of a municipality is applicable to the buildings of a political subdivision unless the Legislature has by statute occupied the particular field covered by the ordinance under attack. Kansas City v. School District of Kansas City, 356 Mo. 364, 201 S.W.2d 930; Cook County v. City of Chicago, 311 Ill. 234, 142 N.E. 512, 31 A.L.R. 442; Pasadena School District v. City of Pasadena, 166 Cal. 7, 134 P. 985, 47 L.R.A., N.S., 892, Anno.Cas.1915B, 1039.

One of the first courts to write on the question was the Supreme Court of California in Pasadena School District v. City of Pasadena, 166 Cal. 7, 134 P. 985, 47 L.R.A.,N.S., 892. There, by general law the school property within a school district was committed to the control of the governing body of the independent school district and it was argued that for that reason it was not subject to the city's building regulations. It was there held that the constitution gave the municipality the authority to make and enforce within its limits police, sanitary and other regulations not in conflict with the general law. The court held, however, that this was not such a general law as would deprive the municipality of enforcing its police regulations. In summarizing the holding in the Pasadena case, the Illinois Supreme Court, in Cook County v. City of

Chicago, 142 N.E. 512, 515, 31 A.L.R. 442, properly explained it as follows:

"In answer to the argument that if the power of the city authorities be sustained the effect would be to deprive the state of its power to regulate the building of schools, it was held that while the state, in the exercise of its police power, undoubtedly might provide a complete system of regulation for the protection of public health, safety, and comfort in the erection of the school buildings of the state, such had not been done, and that it was not intended by the Legislature to empower the trustees of school districts to exercise such police power; that a school district which embraces territory included in a densely populated city, or whose territory, as such, is exclusively within the city, should be made subject to reasonable regulations for the benefit of the entire city concerning fire protection; that the Legislature recognized that in the matter of public safety school districts should be subject to the same building regulations as governed others erecting structures in the city, and that the only way it could be relieved from such control would be by general law."

The California Supreme Court has subsequently written on the subject in the case of Hall v. City of Taft, 47 Cal.2d 177, 302 P.2d 574. However, the facts in that case were quite different from the facts of the Pasadena case. By general statute there had been set up an elaborate system whereby the state itself controlled all building of schools in the state. It provided that the state department of education should establish standards for school buildings, review and approve all plans and specifications for buildings and disapprove those not meeting the standards, furnish plans, specifications and building codes, and make rules and regulations to carry out those activities. Another provision of the general law, which we quote from the court's opinion, was:

"The Division of Architecture of the Department of Public Works under the

police power of the State shall supervise the construction of any school building or, if the estimated cost exceed four thousand dollars ($4,000), the reconstruction or alteration of or addition to any school building, for the protection of life and property."

It was further provided that the State Division of Architecture was to make such inspection of school buildings and the work of construction or alteration as in its judgment was necessary or proper for the enforcement of the law and the protection of the safety of the pupils, the teachers *and the public*. The State of California itself preempted the field covered by the ordinance of the City of Taft. This case differed from the Pasadena case because in Pasadena the state had not provided for standards and regulations of school buildings by general law. However, the court in City of Taft also held that under the Legislature's method of providing for public education, the public local boards of trustees of school districts were holding school property in trust for the state; that since police powers of a city are not applicable to the state itself that the ordinance regulating buildings was not applicable to the school district; and that the Pasadena case was overruled in so far as it was inconsistent with their holding in the City of Taft case.

We do not agree with the reasoning of the California court in Hall v. City of Taft as applied to the organization of public schools in Texas.

■ The two grounds upon which the California court based its opinion in the City of Taft case (i. e., that the ordinance regulating buildings does not apply to the state itself and that the state has pre-empted the field of regulation of the construction of school buildings) are not applicable to the case before this court. Although our independent school districts are creatures of the state and receive substantial funds for their operation from the state, they are independent political entities and we will not classify their property as state property. The Legis-

lature in its wisdom has vested the local school board with broad powers and we know of no state which allows more control of its local schools to the local people than does the State of Texas. The Legislature, in providing that local school boards shall contract for the erection of school buildings and superintend the construction of same, made no provision whatsoever that they should regulate, supervise or control in any manner the building of school buildings and provided for no safety regulations for the protection of the occupants or the property of others in the vicinity of the school buildings.

The Supreme Court of Missouri has written twice on this subject in the cases of Board of Education of City of St. Louis v. City of St. Louis, 184 S.W. 975, and Kansas City v. School District of Kansas City, 201 S.W.2d 930. We believe that the reasoning and holdings of that court are persuasive because of the similarity between the constitutional and statutory provisions of Missouri and Texas.

Board of Education of City of St. Louis v. City of St. Louis, supra, involved the applicability of the city building ordinances to a system of vents from the water closets in a school building. The contract for the building provided for a certain type of venting while the city ordinances required another. By statute, school officials were charged with the responsibility for ventilation, warming, sanitary conditions and proper repair thereof and were authorized to appoint assistants, one who was to be an engineer, to design and construct such apparatus for the public school buildings. The court merely held that the general charter powers of the city must yield to the provisions of a law having special application to particular matters.

In the later case of Kansas City v. School District of Kansas City, supra, the question was whether the city could collect inspection fees for the school district for inspection of boilers, smokestacks, fuel-burning facilities and elevators pursuant to city ordinances

passed under the police power. In passing on collection of such fees, the court found it necessary to pass on the applicability of the ordinance itself as applied to a school district and held that the school district was subject to the regulations in question. The Missouri court recognized that the state could have delegated to the school district the full responsibility of taking particular measures in relation to school buildings which would otherwise be within the scope of the city's police power, but stated:

> " * * * Since the State itself has taken no precautionary measures, and City has been vested with the regulatory and supervisory responsibilities of the exercise of the police power, and School District (having no police power) has not been expressly and specifically given full duty to attend to these responsibilities, we think the Legislature is content in the thought the measures to be taken are within the police power vested in City." 201 S.W.2d at 934.

The Kansas City case is not inconsistent with the earlier St. Louis case, that decision only holding that the Legislature had in fact placed responsibility in the School District as to the building requirements in question.

In Cook County v. City of Chicago, 311 Ill. 234, 142 N.E. 512, 31 A.L.R. 442, the Illinois Supreme Court held that the fire regulations of a municipal corporation are applicable to county buildings within the corporate limits of the municipality; that the general police power was given to municipalities and not to the counties.

In Salt Lake City v. Board of Education of Salt Lake City, 175 P. 654, the Supreme Court of Utah held the ordinances of the city requiring construction with fireproof materials not applicable to school buildings. The holding appears to be based partially on peculiar statutory provisions of Utah and partially on the lack of necessity of such provisions as applied to school buildings. It should be noted, however, that the court

did uphold the city ordinance requiring the school buildings to be connected by telephone or otherwise to the fire department.

The Legislature has provided that the board of trustees shall maintain and control the public schools to the exclusion of every other authority, Art. 2763a, and that the trustees shall contract for the erection of buildings and superintend the construction of same. Art. 2752. These statutes are part of the statutory scheme for making the board of trustees and local school districts independently responsible for the education of the children of Texas. The building of school buildings is but a necessary incident to the fulfillment of the primary duty of educating the young. We believe the better rule to be that the school buildings of an independent school district are subject to the reasonable ordinances of the city. The state has the responsibilities of educating the children of Texas and of protecting the health and safety of its citizens. The state chose to fulfill its duties of providing education through the local school districts and to discharge its duties of protecting the health, safety and property of the people by delegating such to the municipalities. The city, in performing its duties as delegated to it by the state, does not usurp the authority and responsibility of the school district in the realm of education by requiring the school buildings to meet certain minimum standards of construction any more than it usurps the control and management of individuals and private corporations over their property and affairs by making them meet those same standards.

To hold otherwise would be to leave a hiatus in regulation necessary to the health and safety of the community. The state has not provided a system of regulation and inspection of school buildings under construction by local school districts as has the State of California. If the city cannot require certain standards, there could be only the school district itself to determine such standards. The schools could be

built so as to be inconsistent with the city's scheme of regulation and inconsiderate of the city's peculiar problems of health and safety. We adopt the language of the Supreme Court of Missouri in Kansas City v. School District of Kansas City, quoted above:

" * * * we think the Legislature is content in the thought the measures to be taken are within the police power vested in City." 201 S.W.2d at 934.

The judgment of the Court of Civil Appeals is affirmed.

GRIFFIN, J., dissenting.