**AUSTIN INDEPENDENT SCHOOL DISTRICT, Petitioner,**

v.

**CITY OF SUNSET VALLEY, Respondent.**

No. B–3822.

Supreme Court of Texas.

Nov. 14, 1973.

Warren Burnett, Associated, Richard J. Clarkson, Odessa, for petitioner.

McGinnis, Lochridge & Kilgore, James W. Wilson, William H. Bingham and Shannon H. Ratliff, J. M. Patterson, Jr., Austin, for petitioner.

John A. Dennis, Austin, for respondent.

**SAM D. JOHNSON, Justice.**

This suit was filed by the Austin Independent School District against the City of Sunset Valley for declaratory judgment and injunctive relief. In issue is the authority of the City, under the circumstances prevailing, to wholly prohibit the location of school facilities within its boundaries.

The City of Sunset Valley is served by, is a part of, and is entirely within the boundaries of the Austin Independent School District. Though it enjoys all the grade levels and supporting facilities of the School District for its children, the City has only one facility, an elementary school, within its boundaries. Pursuant to Art. 1011a, Vernon's Tex.Rev.Civ.Stat.Ann., the City enacted a zoning ordinance whereby the entire City would be residential. The ordinance contemplates only residential construction for all the City. Sunset Valley was incorporated as a general law city and at the time of trial had a population of about 250 persons.

The duly elected trustees of the Austin Independent School District, after extensive study, research and deliberation, determined to construct the centralized auxiliary facilities supportive of school purposes in issue here. Taking into consideration all relevant factors and acting for and in the interest of the entire School District, the trustees determined to locate the auxiliary facilities within the corporate limits of the City of Sunset Valley. The proposed improvements consist of about 62 acres and include a football stadium, a field house, an athletic field and a bus garaging center with repair and maintenance facilities. The proposed facilities would not be auxiliary to the existing elementary school or any proposed classroom building; they were rather designed and located to serve a substantial part of the multiple schools of the district which are located throughout its boundaries.

The School District's attorney called upon the City to issue it a building permit, amend its zoning ordinances or de-annex the acreage. The City refused these proposals and threatened to enforce the penal provisions of its ordinances if construction began.

It was under these circumstances that the School District filed the instant suit for declaratory judgment and injunctive relief against the City. The School District sought a declaration that the zoning ordinances of the City were ineffective to prevent the School District from erecting the proposed facilities. The City of Sunset Valley responded, seeking itself a declaratory judgment delineating the rights of the parties. The trial court granted the declaratory and injunctive relief sought by the School District. The Austin court of civil appeals reversed the judgment of the trial court and granted the declaratory relief sought by the City. 488 S.W.2d 519. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

At the outset two significant factors which permeate this opinion must be recognized fully. First, that the *reasonableness* of the School District's action is not before this court. The trial court judge filed findings of fact and conclusions of law, stating explicitly that the School District did not act unreasonably in selecting this particular site. These findings were not attacked on appeal and are not before this court. Second, and equally clear, that there is no issue of nuisance before the court. It is apparent from the record and was conceded by both counsel in oral argument that there is no theory of nuisance to be considered.

■ The issue is therefore presented whether, under this record, the City may utilize its zoning powers to wholly exclude from within its boundaries school facilities reasonably located. We conclude that it may not. Section 1, Article VII of the Constitution of Texas, Vernon's Ann.St., directs the Legislature to "establish . . . an efficient system of public free schools." The Legislature has delegated this duty, in part, to independent school districts; it has conferred necessary powers of eminent domain upon such districts, Tex.Ed.Code § 23.31 (1972), V.T.C.A., and

it has conferred upon trustees of such districts "exclusive power to manage and govern the public free schools of the district." Tex.Ed.Code § 23.26(b) (1972).

■ All parties as well as the court below agree that, as a general rule, cities cannot *exclude* schools from areas zoned residential. 3 Yokley, Zoning Law and Practice § 28–58 (3d ed. 1967). The City contends, however, that the School District is subject to the zoning regulations of the City, citing two cases, Roman Catholic Diocese v. Ho-Ho-Kus Borough, 42 N.J. 556, 202 A.2d 161 (1964) and School Dist. of Philadelphia v. Zoning Bd. of Adjust., 417 Pa. 277, 207 A.2d 864 (1965). Neither case is convincing authority for respondent's contention. In *Ho-Ho-Kus* the plaintiffs sought to build a private high school in a residential area. Faced with a New Jersey statute compelling equal treatment of public and private schools in zoning matters, the court said it would not be afraid to leave zoning decisions to public school trustees, but feared doing so with private school trustees since they were in no way responsible to the electorate. Because of the peculiar statutory situation in New Jersey, the court was compelled to subject public schools to the city's zoning ordinances in order to limit the power of private school trustees. It is to be borne in mind that Texas has no statute equating public and private schools; that the instant case involves public schools; that the school trustees are elected by and responsive to all the citizens of the entire District (including those of Sunset Valley); and that the trustees so elected must be presumed to act in the public interest in all their actions, particularly in determining the location of school facilities.

In the City's second case, School Dist. of Philadelphia v. Zoning Bd. of Adjust., *supra,* the city zoning ordinance required one parking space per 1,000 square feet of building area. The school district's proposed construction provided no parking, however, and the city refused to grant a

variance. The court recognized the city's authority to pass ordinances for the protection of safety, health and general welfare and upheld the contentions of the city. The court pointedly stated, however:

> "We feel constrained to state at this point that the question of whether or not the City can prevent the erection of a school building in any particular zoning district has not been raised on this appeal . . . . We would consider it highly doubtful, however, that the City could 'zone-out' schools entirely, or could limit the statutory grant of discretion applicable to all school directors within the Commonwealth to choose the location of school grounds." 207 A.2d at 871.

In its opinion, the Pennsylvania court relied heavily upon a case from this court, Port Arthur Independent Sch. Dist. v. City of Groves, 376 S.W.2d 330 (Tex.1964). In *Groves* the issue was whether the school district had to comply with the city's *building regulations*. Neither *Groves* nor *School Dist. of Philadelphia* dealt with the location of a school facility; both cases turned on the police power of the city to enforce necessary health and safety regulations. The enforcement of health and safety regulations is not before the court in the instant case. What is before the court is a zoning ordinance of the City which wholly excludes the school facilities in issue.

Arrayed against the City's contentions are numerous cases to the contrary. Looking first to New York and California cases, the City argues that the Legislatures in these states have enacted comprehensive education codes to limit the power of school boards. *See* Town of Onondaga v. Central School District # 1, 56 Misc.2d 26, 287 N.Y.S.2d 581 (1968); Town of Atherton v. Superior Court, 159 Cal.App.2d 417, 324 P.2d 328 (1958); Hall v. City of Taft, 47 Cal.2d 177, 302 P.2d 574 (1956). In California, "while the local planning commission may recommend concerning the lo-

cation of a school the ultimate determination of the site is in the school board." *Town of Atherton, supra,* 324 P.2d *at* 331. In New York the school district is required to submit plans and specifications for construction to the State Commissioner of Education. It is to be noted, however, that neither statutory scheme precludes the school board from selecting sites for school facilities.

The City attempts to distinguish the leading Missouri case, State v. Ferriss, 304 S.W.2d 896 (Mo.1957), by arguing that the Missouri and Texas statutes are not analogous; specifically, that Missouri law gives the school districts power to "select" sites, § 177.141 V.A.M.S., whereas Texas law gives school districts only the power to "manage," (Sec. 23.26(b), Texas Education Code) and "acquire," (Sec. 23.31, Texas Education Code) property. Other than this distinction, the laws of Missouri and Texas are all but identical, and only a strained interpretation gives substance to the City's distinction. To make any sense of Section 23.26(a), "[t]he trustees . . . may acquire and hold real and personal property," and Section 23.31, "school districts . . . shall have the power by the exercise of the right of eminent domain to acquire the fee simple title to real property for the purpose of securing sites upon which to construct school buildings or for any other purpose which may be deemed necessary for the independent school district," one must read into these statutes the power to "select" sites for school buildings. Without such a construction, the responsibility for site selection is not otherwise designated in this state and historically this function has been exercised by the school trustees.

The City must rely on Tex.Rev.Civ.Stat. Ann. art. 1011a, the statute granting cities the right to zone, for proof of legislative intent to subject school districts to the zoning authority of cities. The Missouri zoning statute, chapter 89, § 89.020, in language *identical* to that in the Texas statute, provides that the city is empowered to

"regulate and restrict . . . the location and use of buildings, structures and land for trade, industry, residence or other purposes." The court in State v. Ferriss, *supra,* discussing this statute, said, "[c]learly, it contains no express grant of power to cities to regulate or restrict the location of *schools* . . . ." 304 S. W.2d *at* 900.

We are of the opinion that the court of civil appeals erroneously cited Port Arthur Independent Sch. Dist. v. City of Groves, *supra,* as controlling. In *Groves* the question was whether, in the *construction* of a school building, school authorities had to comply with a city's *building regulations.* Here the question is whether a school district, with no question as to the reasonableness of its action and no question of public nuisance involved, may *locate* school facilities in an area which a city has zoned for residential use. The difference in the two *situations* is illustrated by two Missouri cases, Kansas City v. School Dist. of Kansas City, 356 Mo. 364, 201 S.W.2d 930 (1947) and State v. Ferriss, *supra. Kansas City* involved a question of whether the city could collect inspection fees from a school district for making safety inspections. The court correctly held that the school district was subject to the safety regulations. In *Ferriss,* decided subsequently, the question was whether a school district could condemn a tract zoned residential by a city for the location and erection of a school building and accessory facilities such as a stadium and athletic fields. In deciding that *Kansas City* was not controlling, the court said, "the case deals only with the city's power of *regulation of facilities* of public school buildings, and not with the *selection or location* of school sites."[1] 304 S.W.2d *at* 899. The policy considerations justifying regulations of school construction have no application to the selection of school sites.

The determination flowing from the foregoing is not that the School District can act with impunity, however. Bearing in mind that the reasonableness of the School District's action is not before the court, it may be profitable to examine a solution obtained in two jurisdictions in cases where this was not so, in cases involving conflicts between city zoning laws and the location of educational facilities. In New Jersey and Delaware immunity from city zoning laws is tempered by an inquiry into the reasonableness of the school authorities' actions. City of Newark v. University of Delaware, 304 A.2d 347 (Del.Ch.1973); Rutgers, State University v. Piluso, 60 N.J. 142, 286 A.2d 697 (1971); Washington Twp. v. Ridgewood Village, 26 N.J. 578, 141 A.2d 308 (1958). The most recent Delaware case on this issue says, "it is clear that the University in its growth and development should not be subject to restriction or control by local land use regulations. This immunity is absolute unless the City in a given instance can show that its exercise is unreasonable or arbitrary." City of Newark v. University of Delaware, *supra,* 304 A.2d *at* 349. Even though the reasonableness of the School District's action is not before the court, the City in the instant case would have the court go one step beyond these cases and hold here that a school district is subject to the zoning power of a city. This additional step is without support in the law of this state or any other jurisdiction. In effect, the City would shift the burden of proof entirely and require the School District to prove that the zoning ordinance of the City is unreasonable. The court is of the opinion that the broadest weight of authority and the better reasoned position in this type instance is that expressed in *City of Newark.*

One subsidiary issue remains. The court of civil appeals' opinion distinguishes

---

1. Iowa makes the same distinction between regulations of construction and interference with site selections. *See* Cedar Rapids Com. Sch. Dist. v. City of Cedar Rapids, 252 Iowa 205, 106 N.W.2d 655 (1960); City of Bloomfield v. Davis County Com. Sch. Dist., 254 Iowa 900, 119 N.W.2d 909, 913 (1963).

between accessory facilities adjacent to regular classroom buildings and separate facilities supporting numerous schools within the district, as here. We do not agree with this distinction. It seems unquestionable that school districts are authorized, indeed directed, to acquire sites for closely allied and auxiliary athletic facilities supportive of the schools' purposes. Tex.Ed.Code §§ 20.21, 20.22 (1972).[2] The erection of bus storage facilities is also a proper exercise of power. Texas Education Code, §§ 16.51–16.63, requires school districts to provide bus transportation for school children in certain instances, and the Federal Government has imposed on many Texas school districts, including Austin, the obligation to transport many children. Texas Education Code, § 23.31, authorizes school districts to acquire property "to construct school buildings or for any other purpose which may be deemed necessary for the independent school district."

Numerous out-of-state cases recognize that athletic facilities are an integral part of public school education. *See* Com'rs of Dist. of Columbia v. Shannon & Luchs Const. Co., 57 App.D.C. 67, 17 F.2d 219 (1927); Yancey v. Haefner, 268 N.C. 263, 150 S.E.2d 440 (1966). In *Yancey* the court upheld a permit to build an athletic stadium in an area zoned residential. Several decisions also recognize the right of school districts to build bus facilities. City of Bloomfield v. Davis County Com. Sch. Dist., 254 Iowa 900, 119 N.W.2d 909 (1963); Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So.2d 911 (1959).

Out-of-state cases do not distinguish between adjacent and centralized facilities and bus depot and garage facilities are treated like athletic facilities. City of Bloomfield v. Davis County Com. Sch. Dist., *supra;* Lauderdale County Board of Education v. Alexander, *supra.* If a school district can properly build auxiliary facilities, the erec-

tion of these centralized facilities presents no impediment.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

Concurring opinion by POPE, J., in which WALKER, J., joins.

POPE, Justice (concurring).

I concur in the result, not by reason of the School District's immunity from the police regulations embodied in the municipal ordinances, but by reason of the unassailed findings and conclusions of the trial court that the School District acted reasonably.

It is the duty of cities, not school districts, to enact ordinances in the exercise of their police powers. Neither schools nor any other person or entity should be free from such regulations in the usual situation, as we have already held. In Port Arthur Independent Sch. Dist. v. City of Groves, 376 S.W.2d 330 (Tex.1964) we wrote: "The state chose to fulfill its duties of providing education through the local school districts and to discharge its duties of protecting the health, safety and property of the people by delegating such to the municipalities." Compliance with reasonable minimum standards of construction, we said, may be required of school buildings the same as other buildings.

Zoning regulations are grounded upon the reasonable exercise of police powers. Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) set that issue at rest. See also, Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928); Gorieb v. Fox, 274 U.S. 603, 47 S.Ct. 675, 71 L.Ed. 1228 (1927); Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934). In *Euclid,* a suburban municipality enacted an ordinance which zoned areas for particular uses, including residences,

---

2. *See* Landrum v. Centennial Rural High School Dist., 146 S.W.2d 799 (Tex.Civ.App.—Austin 1940, writ dism'd jdgmt. cor.), gymnasium is a "school building"; and South-

western Broadcast Co. v. Oil Center Broadcast Co., 210 S.W.2d 230 (Tex.Civ.App.—El Paso 1947, writ ref'd n. r. e.).

**676**

schools, churches and businesses. The court recognized that residential zoning was within the police powers of the city because zoning concerned such matters as safety and security of home life, the avoidance of street accidents, overcrowding, the reduction of traffic and resulting confusion in residential sections, the decrease of noise, the accessibility of fire equipment, and the preservation of a more favorable environment in which to raise children.

A school's immunity from reasonable police regulations should be limited by a rule of reasonableness. This was the approach taken by the Supreme Court of New Jersey in Rutgers, The State University v. Piluso, 60 N.J. 142, 286 A.2d 697 (1972). The court ruled that such immunity must not be exercised unreasonably so as arbitrarily to override all important legitimate local interests. See also, City of Newark v. The University of Delaware, 304 A.2d 347 (Del.Ch.1973); Township of Washington v. Village of Ridgewood, 26 N.J. 578, 141 A.2d 308 (1958); City of Richmond v. Board of Supervisors, 199 Va. 679, 101 S. E.2d 641 (1958); Annot., 36 A.L.R.2d 653, Zoning-Schools (1954). An important consideration, among others, in determining the reasonableness of an ordinance which excludes a school from a particular site is whether the ordinance permits schools at other alternative locations and the suitability of alternate sites. Porter v. Southwestern Public Service Company, 489 S.W.2d 361 (Tex.Civ.App.1973, writ ref'd n.r.e.). In such cases the burden of proof should be on the party who seeks to avoid the zoning regulation and would require that party to prove the reasonableness of the claimed immunity. Governmental Immunity From Local Zoning Ordinances, 84 Harv.L.Rev. 869 at 883–886 (1971); Sales, The Applicability of Zoning Ordinances to Governmental Land Use, 39 Texas L.Rev. 316, at 328–329 (1961).

I concur in the result.

WALKER, J., joins in this concurring opinion.