

# The Attorney General of Texas

August 31, 1982

This Opinion
Affirms Opinion
*illegible signature* 218

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Henry Wade
Criminal District Attorney
Condemnation Section
Third Floor, Services Building
Dallas, Texas   75202

Opinion No. MW-508

Re: Authority of county fire marshal with respect to arson investigation

Dear Mr. Wade:

You have requested an attorney general opinion regarding the duties of the fire marshal of Dallas County. The Commissioners Court of Dallas County, pursuant to article 1606c, V.T.C.S., created the office of county fire marshal whose duties are specified in that statute. You have asked four questions:

1. What is the county fire marshal's responsibility for arson investigation both within unincorporated areas and incorporated areas of Dallas County?

2. If requested by an area city to investigate an arson case within the corporate city limits, what discretion does the county fire marshal have?

3. What responsibility and authority does the office of county fire marshal have to inspect county facilities for fire prevention purposes and private businesses in unincorporated areas, and does the county fire marshal have the authority to abate fire hazards in unincorporated areas?

4. What authority do area municipalities have to enforce their fire codes over county owned facilities?

Your first question is divided into two subjects -- the responsibilities of the fire marshal in unincorporated areas and in incorporated areas. In unincorporated areas, section 2 of article 1606c, V.T.C.S., states that "[i]t shall be the duty of the said County Fire Marshall to investigate the cause, origin and circumstances of every fire occurring within the county, outside any

incorporated city, town or village, by which property has been destroyed or damaged...." The fire marshal is directed to "especially make investigation" to determine if fire was the result of carelessness or design. Section 4 of the statute gives the fire marshal the discretion to subpoena witnesses and to file misdemeanor charges against witnesses who refuse to be sworn, to appear and testify, or to bring forward evidence. Reading the two sections together, the fire marshal has the duty to investigate the cause of fires occurring in unincorporated areas and may subpoena witnesses to that end if he feels that further investigation is necessary.

In answer to the second part of the question, section 2 of article 1606c does not authorize a fire marshal to investigate causes of fires within incorporated cities, towns, or villages. Section 8 further provides in pertinent part:

> Sec. 8. The County Fire Marshal shall be charged with enforcing all State and county regulations that pertain to fire or other combustible explosions or damages caused by fire or explosion of any kind; he shall coordinate the work of the various fire-fighting and fire-prevention units within the county, provided that, he shall have no authority to enforce his orders or decrees within the corporate limits of any incorporated city, town or village within the county and shall act in a cooperative and advisory capacity there only when his services are requested; he shall cooperate with the State Fire Marshal in the carrying out of the purposes of fire prevention, fire fighting or post-fire investigation. If called upon by any city or State Fire Marshal or the Fire Chief of any incorporated city, town or village to aid in an investigation or to take charge of same, he shall act in the capacity requested.

Thus, the county fire marshal has no authority to enforce his orders in incorporated cities, towns and villages.

Your second question deals with the duty of the fire marshal to investigate arson cases if requested by an area city. Section 8 of article 1606c establishes the duties of the fire marshal if he is called upon to aid in, or to take charge of, an investigation. Section 8 states in pertinent part:

> If called upon by any city or State Fire Marshal or the Fire Chief of any incorporated city, town or village to aid in an investigation or to take

> charge of same, he <u>shall</u> act in the capacity
> requested.  (Emphasis added).

It is important to note the use of the word "shall" in this section, rather than the permissive word "may." "Shall" is generally construed to be mandatory, <u>Moyer v. Kelley</u>, 93 S.W.2d 502, 503 (Tex. Civ. App. - San Antonio 1936, writ dism'd w.o.j.); <u>accord</u>, Attorney General Opinions C-775 (1966); C-332 (1964); WW-831 (1960); V-1201 (1951), and is presumed to be imperative unless the context indicates otherwise. <u>Jaynes v. Lee</u>, 306 S.W.2d 182, 185 (Tex. Civ. App. - Texarkana 1957, no writ); <u>see</u> Attorney General Opinions H-466, H-326 (1974).  If the statute is read as a whole, it can be seen that the drafters of article 1606c used the word "may" in sections 1 and 5 and used permissive language ("at its option"; "[w]hen in his opinion") to express a permissive directive.  "Shall" was used consistently in the statute to delineate the duties and powers of the fire marshal and should consequently be construed as a mandatory requirement.  <u>Cf.</u> Attorney General Opinion H-466 (1974).

Your next question is also capable of being broken down into two parts.  You inquire about:

> 1.  the responsibility and authority of a fire
> marshal for inspecting, for fire prevention
> purposes
>
> > a.  county facilities, and
> >
> > b.  private businesses in unincorporated
> > areas, and
>
> 2.  the authority of the fire marshal to abate
> fire hazards in unincorporated areas.

Each county's commissioners court has the responsibility for providing and repairing county buildings. V.T.C.S. art. 2351.  The county commissioners court may create the office of county fire marshal pursuant to article 1606c.  The office of fire marshal, once created, must follow the directives of article 1606c.  Section 7 of the article is relevant to the investigations of dangerous conditions. It provides, in pertinent part:

> <u>It shall be his duty</u> when called upon, or when he
> has reason to believe that it is in the interest
> of safety and fire-prevention, <u>to enter any
> premises and inspect the same</u>....  (Emphasis
> added).

The statute does not distinguish between county or non-county, private business, or residential premises. The fifth edition of Black's Law Dictionary, at page 1062, defines premises as "[l]ands and tenements; an estate, including lands and buildings thereon." Clearly, county buildings are included in the phrase "any premises." Private businesses also fall within the ambit of "any premises," although the duty to inspect is circumscribed by the fourth amendment of the United States Constitution and by article I, section 9 of the Texas Constitution. See v. City of Seattle, 387 U.S. 541 (1967) (search warrant required for administrative inspection of business premises); Poindexter v. State, 545 S.W.2d 798 (Tex. Crim. App. 1977). The fire marshal must inspect county facilities or private businesses in unincorporated areas under circumstances described in section 7.

The second part of your question is whether the fire marshal has the authority to abate fire hazards in unincorporated areas. Section 7 of article 1606c is pertinent:

> [I]f he find[s] that because of inflammable substance being present, dangerous or dilapidated walls, ceilings or other parts of the structure existing, improper lighting, heating or other facilities being used that endanger life, health or safety, or if because of chimneys, wiring, flues, pipes, mains or stoves, or any substance he shall find stored in any building, he believes that the safety of said building or that of its occupants is endangered and that it will likely promote or cause fire or combustion, he shall be empowered to order the said situation rectified forthwith and the owner or occupant of the said structure shall comply with the orders of the said County Fire Marshal.... (Emphasis added).

There is no discussion of jurisdiction in section 7. However, the jurisdiction of the fire marshal has been clearly established in sections 2, 3, and 8. Section 7 must be read in conjunction with the entire statute. The Texas Supreme Court has stated that "[s]tatutes should be read as a whole and construed to give meaning and purpose to every part." Ex parte Pruitt, 551 S.W.2d 706, 709 (Tex. 1977). Therefore, the fire marshal has authority to abate fire hazards in unincorporated areas.

Your final question deals with the authority of area municipalities to enforce their fire codes over county owned facilities located within the municipality. As a basic premise, it is a valid exercise of municipal police power to enforce ordinances for the protection of health, life, and property. V.T.C.S. art. 1175, §34; accord, Port Arthur Independent School District v. City of

Groves, 376 S.W.2d 330 (Tex. 1964); City of Galveston v. Galveston County, 159 S.W.2d 976 (Tex. Civ. App. - Galveston 1942, writ ref'd).

There is no direct Texas authority for the proposition that municipalities may enforce their fire codes over county owned buildings. However, a Houston civil appeals court held:

> Properties of the State are excluded as a matter of law from the application of City building regulations. Port Arthur Independent School Dist. v. City of Groves, supra. Counties, being arms of the state, would likewise be immune from city-imposed payment of fees as in the instant case.

City of Houston v. Houston Independent School District, 436 S.W.2d 568, 572 (Tex. Civ. App. - Houston [14th Dist.] 1969), modified, 443 S.W.2d 49, 50 (Tex. 1969). Although this language appears to establish county immunity from municipal ordinances, the precedential value of this statement is doubtful. The supreme court did not grant a writ of error, but modified the civil court decision stating that when the court went beyond the issue of dissolving a temporary injunction, its decision was in conflict with previous decisions. The supreme court reserved judgment on the question regarding county-city relationships.

Although there are no Texas cases directly on point, there are out-of-state cases in which some jurisdictions find counties amenable to ordinances, see, e.g., Cook County v. City of Chicago, 142 N.E. 512 (Ill. 1924), and some which do not. See, e.g., Kentucky Institute for Education of Blind v. City of Louisville, 97 S.W. 402 (Ky. 1906).

Without dispositive Texas authority, we must examine the most similar Texas Supreme Court case and the relevant attorney general opinions. In Port Arthur, supra, the Texas Supreme Court made the following statement in a case dealing with the enforcement of municipal fire codes on a school district building:

> Although our independent school districts are creatures of the state and receive substantial funds for their operation from the state, they are independent political entities and we will not classify their property as state property.

376 S.W.2d at 333. The court also stated that the police powers of a municipality are not applicable to the state or its property, but they are applicable to the buildings of a political subdivision unless the legislature has by statute occupied the field. Compare Attorney

General Opinions C-690 (1966); C-301 (1964); V-977 (1949) <u>with</u> Attorney General Opinions M-182 (1968); WW-218 (1957).

Attorney General Opinion WW-218 (1957) determined that a municipal ordinance did apply to a county. This opinion is precisely on point with the question you ask. There, a county asked whether it was required to pay fees assessed by an ordinance, or charges for permits for demolition or construction. The opinion predates <u>Port Arthur</u> by seven years, and anticipates its reasoning:

> We are of the view that the duty to erect a county courthouse rests upon the relation of the county to the State. Its use concerns the public at large, for the whole state is interested in the enforcement of the law in each county and the county acts in the building of the courthouse as an agency of the state. Police power is granted to the municipal corporation by virtue of Article 1175(34).... If the regulation imposed by the city to 'protect health, life and property...' is to be uniform in its protection, we can perceive of no good reason why the county should not be amenable to the reasonable police regulations which the city imposes in the interest of general welfare. <u>Cook County v. City of Chicago</u>, 311 Ill. 234, 142 N.E. 512 (1924). It can be argued that the state has committed the control of the county buildings to the county, and that the county has preempted the field of regulations to the exclusion of the city within whose boundaries the buildings may be located. It is true that the state may confer upon the commissioners' court of a county such power of regulation and control as to exclude some of the broad police jurisdiction which would normally lie in the city. In this instance, however, the only power which the Legislature has conferred upon the county is that set forth in Article 2351(7) Vernon's Civil Statutes, wherein it states:

>> Each commissioners court shall: ...Provide and keep in repair courthouses, jails and all necessary public buildings....

> We are of the opinion that the above quoted statute is so general as not to vest sole police jurisdiction with regard to regulation of county buildings with the county commissioners' court.

> Even if the above provision is given the broadest application permitted by its language, it is not so explicit as to infer that the county should have exclusive police jurisdiction of such buildings. While it is well settled that the county is an agency of the state, it is likewise a creature of the state vested with only such powers as conferred upon it by the state. It would be incorrect to hold that the county is a part of the state in the exercise of police power for reasonable regulatory and inspection purposes in this instance.

We adopt the reasoning of that opinion and reaffirm its holding. We believe that county buildings within municipal areas are susceptible to municipal ordinances, based on the public policy announced in <u>Port Arthur</u>, that the legislature did not intend "a hiatus in regulation necessary to the health and safety of the community," and that by not providing a system of regulation applicable to the county, the legislature was content that safety measures are within the police power vested in the city. 376 S.W.2d at 334-35.

Article 1606c by its very language prevents fire marshals from enforcing their orders within incorporated city limits; the legislature has been very specific to limit a fire marshal's authority to areas outside incorporated cities, towns and villages. <u>See</u> art. 1606c, §§2, 3 and 8.

Based on the foregoing discussion, it is our opinion that municipalities may enforce their fire codes over county owned facilities within incorporated areas.

### S U M M A R Y

> The county fire marshal is responsible for arson investigation within unincorporated areas of Dallas County, but not within incorporated areas. If requested by an area city to investigate an arson case within the corporate city limits, the county fire marshal must act in the capacity requested. The county fire marshal is responsible for inspecting, for fire prevention purposes, county facilities within unincorporated areas, and for inspecting private businesses in unincorporated areas as circumscribed by the fourth amendment of the United States Constitution, and by article I, section 9 of the Texas Constitution. The county fire marshal is

empowered to order the abatement of fire hazards in unincorporated areas. Area municipalities may enforce their fire codes over county owned facilities within incorporated areas.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Patricia Hinojosa
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Rick Gilpin
Patricia Hinojosa
Jim Moellinger