

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

May 10, 2000

The Honorable Al Schorre
Midland County District Attorney
Midland County Courthouse
200 West Wall, Suite 201
Midland, Texas 79701

Opinion No. JC-0218

Re: Whether the Concho Valley Council of Governments, which operates a transport service for Medicaid patients under contract with the Texas Department of Health, is subject to the City of Midland's taxicab ordinance (RQ-0138-JC)

Dear Mr. Schorre:

You ask whether the City of Midland, Texas may enforce its taxicab ordinance against the Concho Valley Council of Governments (the "COG"), a political subdivision of the State of Texas which is operating a transport service for Medicaid patients pursuant to a contract with the Texas Department of Health ("TDH"). We conclude that, to the extent the ordinance is by its terms applicable to the service offered by the COG, neither the fact that the COG is a political subdivision nor the fact that it is operating under a contract with TDH exempts the COG from the ordinance.

As you explain the situation leading to your question, the COG has a contract with TDH under which it provides transportation for Medicaid patients to and from health care providers. The City of Midland takes the view that, by so doing, the COG is engaged in the provision of transport for hire and that accordingly the COG's operations are covered by the provisions of the city ordinance regulating the operation of taxicabs. *See* Letter from Honorable Al Schorre, Midland County District Attorney, to Honorable John Cornyn, Texas Attorney General (Oct. 29, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"].

As we understand the COG's response, it may be summarized thus: (1) the operations in question do not constitute the provision of transport for hire within the meaning of the ordinance; (2) the City of Midland may not enforce the ordinance against it because to do so would "inhibit the COG's performance of [its] function," and a city's "authority to regulate the transportation operations of a political subdivision is severely limited"; (3) the City of Midland may not enforce the ordinance against the COG because the COG is acting as the agent of TDH. Brief from Robert R. Weaver, Executive Director, Concho Valley Council of Governments, to Elizabeth Robinson, Chair, Opinion Committee (Nov. 16, 1999) (on file with Opinion Committee) [hereinafter "COG Brief"].

We note at the outset that you have raised, but do not argue in your brief, one of the issues here: namely, whether the service being provided by the COG under its contract with TDH constitutes the provision of transport "for hire" under the terms of Midland's taxicab ordinance. This office does not ordinarily interpret the provisions of city ordinances and will therefore not attempt to resolve this matter. However, it would appear that there may be some merit to the COG's argument that in transporting Medicaid patients to and from health care facilities under the contract with TDH it is not engaged in transport for hire. "Hire" in this context might suggest, in the ordinary usage, "payment contracted to be made for the temporary use of anything," VII OXFORD ENGLISH DICTIONARY 252 (2d ed. 1989), and in that sense an argument that the transportation of these patients is not within the ordinance does not appear implausible. While we do not decide this question, we think it important to note; for, were a court of competent jurisdiction to accept the COG's argument, the questions we consider here would be moot. We note further, however, that the interpretation of the ordinance is in the first instance a decision for the city.

Assuming that the other questions are not moot, we cannot agree with the COG that either the fact that it is a political subdivision or the fact that it is under contract to TDH shields it from the application of a municipal ordinance adopted pursuant to a home-rule city's authority under its general police power to protect public safety.

The City of Midland is a home-rule city. As such, it looks to the legislature not for grants of authority, but for limitations upon its power. *See Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 490, 491 (Tex. 1993). The powers of a home-rule city include the police power to regulate public health and safety by ordinance. *See* TEX. LOC. GOV'T CODE ANN. §§ 51.001, .072 (Vernon 1999). The Midland taxicab ordinance was, you assert, enacted pursuant to that authority. *See* Request Letter.

The courts and this office have repeatedly found municipal ordinances applicable to other political subdivisions. *See, e.g., Port Arthur I.S.D. v. City of Groves,* 376 S.W.2d 330, 332 (Tex. 1964); *City of Lucas v. North Tex. Mun. Water Dist.,* 724 S.W.2d 811, 816 (Tex. App.–Dallas 1986, writ ref'd n.r.e.); Tex. Att'y Gen. Op. Nos. WW-218 (1957) (county not exempt from city ordinance requiring payment of permit fees in connection with demolition of old buildings and construction of new); MW-508 (1982) (municipality may enforce its fire code over county-owned facility); JM-180 (1984) (county must comply with municipal regulations regarding construction of auxiliary courthouse); JM-737 (1987) (municipal anti-smoking ordinance applicable to county facilities). In both attorney general opinions MW-508 and JM-737, this office specifically rejected the argument that a county, as an "arm of the state," was not subject to generally applicable municipal ordinances. *See* Tex. Att'y Gen. Op. Nos. JM-737 (1987), MW-508 (1982). "[T]he police powers of a municipality are not applicable to the state itself, or its property." *Port Arthur I.S.D.,* 376 S.W.2d at 332. However, the ordinance here is to be enforced against the COG, which is a contractor with the state, not against TDH.

Attorney General Letter Opinion 92-30, upon which the COG relies in its brief, is not to the contrary. Rather, LO-92-30 declares certain portions of a San Antonio ordinance unenforceable

against the VIA Metropolitan Transit Authority (the "MTA"), not because city ordinances cannot be enforced against other political subdivisions, but because those particular portions of the ordinance were preempted by the provisions of a detailed state law establishing the MTA. In that case, former article 1118x of the Revised Civil Statutes sets forth a scheme assigning certain powers directly to the MTA, and LO-92-30 declared invalid those provisions of the San Antonio ordinance which would have usurped the authority given the MTA by statute. *See* Tex. Att'y Gen. LO-92-30, at 5-6.

Indeed, LO-92-30 states, "Municipal regulations that indirectly affect the work of a political subdivision by requiring the work to be conducted in a manner which achieves the political subdivision's goals while protecting municipal interests may be applied to the political subdivision." *Id*. at 4. The opinion specifically held that a provision of the ordinance requiring that MTA charter bus drivers "obtain a city chauffeur's license, which is subject to a separate application process and payment of a separate fee" was not preempted, and was enforceable against the MTA. *Id*. at 7.

The COG suggests that, because it is "a Transit District under the provisions of Chapter 458 of the Transportation Code," it is in a position analogous to that of the MTA in LO-92-30. COG Brief, *supra*, at 2. We cannot agree. Unlike former article 1118x, chapter 458 does not contain the detailed scheme and the detailed grant of authority which LO-92-30 found to preempt the San Antonio ordinance. "[T]he mere fact that the legislature has enacted a law addressing [the] subject [of a city ordinance] does not mean that the subject matter is completely preempted." *City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex. 1990). Should the legislature intend to preempt an area usually within the authority of a home-rule city, it must do so with "unmistakable clarity." *Dallas Merchant's*, 852 S.W.2d at 491. Chapter 458 does not preempt the city's authority to regulate taxicabs with any such unmistakable clarity. Accordingly, we conclude that the Concho Valley Council of Governments' status as a political subdivision does not exempt it from the application of the City of Midland's taxicab ordinance.

We are also unpersuaded by the COG's argument that it cannot be subject to the ordinance because its contract with TDH makes it the agent of the state. Certainly there is language in the case law that suggests that a city may not use its regulatory power to prohibit another political subdivision from its statutorily mandated duties. *See Austin I.S.D. v. City of Sunset Valley*, 502 S.W.2d 670, 672 (Tex. 1973) (city may not exclude school facilities of I.S.D. delegated duty to establish public free schools from its jurisdiction); *City of Lucas*, 724 S.W.2d at 821 (Ordinances purporting to give city authority to prohibit statutorily created water district from constructing wastewater treatment facility are "unreasonable and unenforceable as a matter of law.") But regulation, as the cases make clear, is not prohibition.

Nor can we agree with the COG's argument that the imposition on it of certain fees and a franchise tax "give[s] the City authority to tax the state through its agent the COG." COG Brief, *supra*, at 3. The COG cites no authority for the proposition that the imposition of a tax on one who contracts with the state is by extension an imposition on the state, and we know of none. We note further that the United States Supreme Court specifically rejected the same doctrine, as it applies to

those who contract with the federal government, over sixty years ago. *See James v. Dravo Contracting Co.*, 302 U.S. 134 (1937); *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466 (1939); Tex. Att'y Gen. Op. No. DM-237 (1993) at 2-4 (discussing doctrine of intergovernmental tax immunity).

Accordingly, we conclude that neither the fact that the Concho Valley Council of Governments is a political subdivision nor the fact that it is providing transport service for Medicaid patients under a contract with the Texas Department of Health shields it from the application of the municipal taxicab ordinance of the City of Midland, Texas.

## S U M M A R Y

To the extent that the City of Midland's taxicab ordinance is by its terms applicable to a transport service operated by the Concho Valley Council of Governments, neither the fact that the Council of Governments is a political subdivision nor the fact that it is operating the service under a contract with the Texas Department of Health exempts it from the ordinance.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee