## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 27, 2009

Mr. Robert Scott
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0697

Re: Authority of a home rule city to enforce land development regulations against an independent school district for the purposes of aesthetics and the maintenance of property values   (RQ-0741-GA)

Dear Mr. Scott:

You ask whether a home rule city may enforce certain provisions of its land development regulations against an independent school district.[1] Your question is based upon a letter you received from the Mansfield Independent School District (the "District") objecting to certain requirements imposed upon the District by the City of Mansfield, a home rule municipality (the "City").[2] Specifically, the District questions the validity of the following City zoning ordinance provisions as they apply to the District :

1. set back and height regulations;

2. community design standards;

3. sign standards;

4. landscaping and screening requirements;

5. supplemental requirements for screening of mechanical equipment and service areas;

6. general provisions for fences and free standing walls; and

7. fines for violation of such ordinances.

---

[1]Request Letter (*available at* http://www.texasattorneygeneral.gov).

[2]*See* Letter from Meridith Hayes, Abernathy, Roeder, Boyd & Joplin, P.C., to Robert Scott, Commissioner of Education (Sept. 5, 2008) (attachment to Request Letter) [hereinafter District Letter].

District Letter at 3–5. The District suggests that these regulations serve only to protect "the aesthetic appearance of and property values of" commercial property in the city. *Id.* at 1.[3]

The application of municipal building ordinances to school district property within a municipality was first considered by the Texas Supreme Court in 1964. The court, while acknowledging that an independent school district is a creature of the state, declined to classify its property as "state property." *Port Arthur Indep. Sch. Dist. v. City of Groves*, 376 S.W.2d 330, 333 (Tex. 1964). Rather, "[t]he Legislature, in providing that local school boards shall contract for the erection of school buildings and superintend the construction of same, made no provision whatsoever that they should regulate, supervise, or control in any manner the building of school buildings." *Id.* The court concluded that a city, "in performing its duties as delegated to it by the state, does not usurp the authority and responsibility of the school district in the realm of education by requiring the school buildings to meet certain minimum standards of construction any more than it usurps the control and management of individuals and private corporations over their property and affairs by making them meet those same standards." *Id.* at 334. A subsequent decision added the caveat that a municipality may not in the exercise of its authority wholly exclude from its boundaries a facility operated by an independent school district. *Austin Indep. Sch. Dist. v. City of Sunset Valley*, 502 S.W.2d 670, 673 (Tex. 1973). The court in *City of Sunset Valley* noted that *City of Groves* "turned on the police power of the city to enforce necessary health and safety regulations," whereas the issue before it in the instant case was "a zoning ordinance of the City which wholly excludes the school facilities in issue." *Id. See also City of Addison v. Dallas Indep. Sch. Dist.*, 632 S.W.2d 771, 773 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (school district may place any facility within an area zoned residential and is generally exempt from a city's *location-based* requirements as long as the district is not acting unreasonably or arbitrarily); Tex. Att'y Gen. Op. No. JM-514 (1986) at 2 (municipality may not use zoning power to prevent school district from converting classroom facility to administrative facility).

Courts reviewing municipal ordinances begin with a presumption of validity, wherein the standard of review is abuse of discretion. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792–93 (Tex. 1982). *See also Price v. City of Junction*, 711 F.2d 582, 588 (5th Cir. 1983); *City of Lucas v. N. Tex. Mun. Water Dist.*, 724 S.W.2d 811, 820 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Moreover, the reasonableness of an ordinance is a question of law. *City of Lucas*, 724 S.W.2d at 820.

The District takes particular issue with the City's reliance upon aesthetics and the maintenance of property values to uphold the regulations in question. *See* District Letter at 1, 3. But those considerations have been approved by Texas courts since 1940. In *Connor v. City of University Park*, 142 S.W.2d 706, 712 (Tex. Civ. App.—Dallas 1940, writ ref'd), the court said that "in zoning, the aesthetic consideration is not to be ignored. Harmonious appearance, appropriateness, good taste and beauty displayed in a neighborhood not only tend to conserve the

---

[3]For purposes of this opinion, we accept the District's characterization of the referenced regulations as protective of "the aesthetic appearance of and property values of" property within the municipality.

value of property, but foster contentment and happiness among homeowners." Subsequent cases have focused upon the same considerations. *See, e.g., City of Houston v. Johnny Frank's Auto Parts Co.*, 480 S.W.2d 774, 780 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (quoting language from *Connor*, 142 S.W.2d at 712); *City of Pharr v. Pena*, 853 S.W.2d 56, 61 (Tex. App.—Corpus Christi 1993, writ denied) (considerations of aesthetics as well as surrounding property values "represent a legitimate goal [and] were substantially related to the public welfare"). In the most recent case, the court said that a restriction on off-premise signs "enhances the aesthetic appearance and economic prospects of the community." *Eller Media Co. v. City of Houston*, 101 S.W.3d 668, 675 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Moreover, zoning ordinances and land development standards constitute a portion of a municipality's statutory police power. Chapter 211 of the Local Government Code provides the basis for municipal zoning authority. The powers granted therein "are for the purpose of promoting the public health, safety, morals, or general welfare and protecting and preserving places and areas of historical, cultural, or architectural importance and significance." TEX. LOC. GOV'T CODE ANN. § 211.001 (Vernon 2008).[4] Zoning ordinances include, *inter alia*, regulation of the height and size of buildings and other structures. *Id.* § 211.003(a)(1); *see also id.* § 216.901(a) (home rule city may regulate signs). Another provision permits the governing body of a municipality to divide the city into districts and, within each district, to "regulate the erection, construction, reconstruction, alteration, repair, or use of buildings, other structures, or land." *Id.* § 211.005(a). Zoning regulations "shall be adopted with reasonable consideration, among other things, for the character of each district and its peculiar suitability for particular uses, with a view of conserving the value of buildings and encouraging the most appropriate use of land in the municipality." *Id.* § 211.005(b). Taken together, the foregoing statutes and judicial decisions make clear that the City may enforce reasonable zoning and building ordinances against the District on the bases of aesthetics and the maintenance of property values. Sections 54.004 and 211.005 of the Local Government Code establish the primacy of a municipality in enforcing its building and zoning regulations. In addition, the various cases upholding considerations of aesthetics and the maintenance of property values as sufficient underpinnings for such laws remove substantial obstacles to the implementation of those regulations. Finally, the Texas Supreme Court's decision in *City of Groves* indicates that, in the area of building regulation, a municipality may enforce its reasonable ordinances against an independent school district.

We conclude that a home rule city may enforce its reasonable land development regulations and ordinances against an independent school district for the purposes of aesthetics and the maintenance of property values.

---

[4]Under another portion of the Local Government Code, "[a] home rule municipality may enforce ordinances necessary to protect health, life, and property and to preserve the good government, order, and security of the municipality and its inhabitants." TEX. LOC. GOV'T CODE ANN. § 54.004 (Vernon 2008).

## S U M M A R Y

A home rule city may enforce its reasonable land development regulations and ordinances against an independent school district for the purposes of aesthetics and the maintenance of property values.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee